IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

                                  Chapter 11

THE PALMS OF TREASURE           Case No. 8:08-bk-20354-MGW
ISLAND, LLC,

      Debtor.
_____/

# DEBTOR'S AMENDED PLAN OF REORGANIZATION

STICHTER RIEDEL BLAIN & PROSSER, P.A.
Don M. Stichter
Florida Bar No. 078280
110 E. Madison St., Ste. 200
Tampa, FL 33602
813-229-0144
813-229-1811 (facsimile)
Counsel for Debtor

Tampa, Florida
Dated as of October 20, 2009

# PLAN OF REORGANIZATION

THE PALMS OF TREASURE ISLAND, LLC ("**The Palms**" or "**Debtor**"), hereby files, pursuant to the provisions of Chapter 11 of the Bankruptcy Code, its Amended Chapter 11 Plan of Reorganization (the "**Plan**"). Reference is made to the Amended Disclosure Statement accompanying the Plan which discusses the Debtor, the Debtor's business, assets and liabilities, and which contains a summary of the Plan.

## ARTICLE I
## DEFINITIONS AND CONSTRUCTION

1.1    Defined Terms

As used in the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the meanings set forth below:

*Administrative Expense* means (a) any cost or expense of administration of the Bankruptcy Case that is allowed under Section 503(b) or 507(a)(1) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, motion, request or other Bankruptcy Court-approved pleading seeking such expense in the Bankruptcy Case on or before the applicable Administrative Expense Claims Bar Date, including (i) any actual and necessary costs and expenses of preserving the Estate or operating the business of the Debtor (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in Possession in the ordinary course of its business, (iii) any Claim granted administrative priority status by a Final Order of the Bankruptcy Court, (iv) any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtor for any Postpetition tax year or period, and (v) compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court); (b) any Superpriority Claim; (c) all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (d) any and all other costs or expenses of administration of the Bankruptcy Case that are allowed by Final Order of the Bankruptcy Court; provided, however, that, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim or, unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 9. In no event shall any Claim set out in a Proof of Claim be deemed to be an Administrative Expense (except for any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtor for any Postpetition tax year or period).

*Administrative Expense Claim* means any Allowed Claim of the kind described in Section 507(a)(1) of the Bankruptcy Code, or the costs and expenses of administration of the Reorganization Case that are Allowed under Section 503(b) of the Bankruptcy

Code, to the extent the holder of such Administrative Expense Claim asserts such Claim in the Reorganization Case within the time fixed by any applicable administrative bar date set by the Bankruptcy Court, or otherwise provided by order of the Bankruptcy Court, including, without limitation, any actual, necessary costs and expenses of preserving or operating the Estate, all allowances of compensation and reimbursement of expenses relating to the Reorganization Case which are Allowed pursuant to an order of the Bankruptcy Court under Sections 330 or 503 of the Bankruptcy Code including actual and necessary expenses under Section 503(b)(3) and (4), and any fees or charges assessed against the particular Debtor's estate under Section 1930, Chapter 123, Title 28, United States Code.

*Administrative Expense Claims Bar Date* means the bar date established by the Bankruptcy Court as the last day for filing a request for allowance of an Administrative Expense Claim not otherwise addressed by a Final Order granting assumption or allowing the Administrative Expense Claim.

*Allowed Amount* means the dollar amount in which a Claim is allowed.

*Allowed Claim* means any Claim against the Debtor, or portion thereof, to the extent that such Claim is allowed under the Plan or, to the extent that such Claim has not been withdrawn, paid in full or otherwise deemed satisfied in full, (a) proof of such Claim was filed with the Clerk of the Bankruptcy Court on or before the Bar Date (or, if not filed by the Bar Date, any Claim filed with leave of the Bankruptcy Court, after notice and a hearing) or (b) if no proof of claim is filed, which Claim has been or hereafter is listed by the Debtor in its Schedules filed with the Bankruptcy Court as liquidated in amount and not disputed or contingent and, in either case, as to which either (c) no objection to the allowance thereof has been interposed within the applicable period of limitation fixed in the Plan, in the Bankruptcy Code, in the Bankruptcy Rules, or in a Final Order of the Bankruptcy Court or an objection has been interposed and such Claim or portion thereof has been allowed by a Final Order of the Bankruptcy Court. Unless otherwise specified in the Plan or in a Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include (a) interest on the amount of such Claim accruing from and after the Petition Date, (b) punitive or exemplary damages or (c) any fine, penalty or forfeiture.

*Allowed Class ... Claim* means an Allowed Claim in the particular Class described.

*Allowed Equity Interest* means any Equity Interest, or portion thereof, which either (a) is not a disputed Equity Interest or (b) has been Allowed by a final order of the Bankruptcy Court.

*Allowed Interest* means any Interest in the Debtor.

*Assets* means all property and interests of the Debtor's Estate.

***Assumed Contracts*** means any Prepetition executory contract or unexpired real or personal property lease assumed by the Debtor during the Reorganization Case pursuant to a Final Order of the Bankruptcy Court.

***Auction*** means the sale of the Property by auction to consider any competing bids, to be held in conjunction with the hearing on confirmation of the Debtor's Plan of reorganization scheduled on **August 12, 2009 at the United States Bankruptcy Court, 801 North Florida Ave., Tampa, Florida 33602, Courtroom 8(A) at 10:30 a.m. eastern standard time.**

***Ballot*** means the ballot or ballots to be distributed to holders of Claims in impaired Classes in connection with solicitation of votes to accept or reject the Plan.

***Ballot Date*** means the date set by the Bankruptcy Court as the last date for timely submission of a Ballot accepting or rejecting this Plan.

***Bankruptcy Case*** means the case currently pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code, which was commenced by the Debtor on the Petition Date and presently bears Case No. 8:08-bk-20354-MGW.

***Bankruptcy Code*** means Title 11 of the United States Code, §101 et. seq., as now in effect or as hereafter amended to the extent such amendments are applicable to the Reorganization Case.

***Bankruptcy Counsel*** means Stichter, Riedel, Blain & Prosser, P. A.

***Bankruptcy Court*** means the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, or any other court of competent jurisdiction exercising jurisdiction under Title 11 of the United States Code over the Reorganization Case.

***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, as now in effect or as hereafter amended to the extent such amendments are applicable to the Reorganization Case.

***BAPCPA*** means the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005).

***Bar Date*** means March 9, 2009, the last date established by the Bankruptcy Court for filing Proofs of Claim against the Debtor in the Reorganization Case.

***Business Day*** means any day other than a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

**Cash** means cash, cash equivalents and other readily marketable direct obligations of the United States, as determined with generally accepted accounting principles.

**Causes of Action** means any and all of the Debtor's actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, including but not limited to all avoidance actions and rights to recover transfers voidable or recoverable under Sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code and any other rights to payment that arise either from or outside of the ordinary course of the Debtor's business, and any and all other claims of any value whatsoever, at law or in equity, against any third parties; provided, however, that, when used in the Plan, the term "Causes of Action" shall not include any Liabilities specifically discharged, released or waived (i) in writing by or on behalf of the Debtor or the Reorganized Debtor, as the case may be, or (ii) by order of the Bankruptcy Court. "Causes of Action" shall also include any claims, demands, rights and causes of action that may only be asserted by a Person other than the Debtor on a derivative basis.

**Claim** means (a) any right to payment (including, without limitation, a guarantee) from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured. The term "Claim" when used with respect to litigation also includes any Claim which has been or could be asserted in the litigation. Notwithstanding anything to the contrary contained herein, for purposes of this Plan, the term "Claim" shall be given the broadest possible meaning permitted by the Bankruptcy Code and applicable law.

**Class** means a group of Claims in the Reorganization Case classified together pursuant to the Plan.

**Clerk** means the Clerk of the Bankruptcy Court.

**Clerk's Office** means the Office of the Clerk of the Bankruptcy Court located at the Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Suite 555, Tampa, Florida 33602.

**Collateral** means Property in which the Debtor's Estate has an interest and that secures, in whole or part, whether by agreement, statute, or judicial decree, the payment of a Claim.

**Confirmation or Confirmation of Plan** means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

**Confirmation Date** means the date the Confirmation Order with respect to this Plan is entered on the docket of the Bankruptcy Court pursuant to Bankruptcy Rule 5003; provided, however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which such stay expires or is no longer in effect.

**Confirmation Hearing** means the hearing held by the Bankruptcy Court on confirmation of this Plan pursuant to Section 1128(a) of the Bankruptcy Code.

**Confirmation Order** means the order of the Bankruptcy Court confirming this Plan, whether or not such order is a Final Order.

**Creditor** means any party or entity having a Claim against the Debtor, including, but not limited to, Creditors with Priority Claims, Tax Claims and Administrative Expense Claims, Secured Creditors, and Unsecured Creditors.

**Cure Claim** means any Claim of any nature whatsoever, including any Claim for any cure payment, cost or other amount, if any, due and owing by the Debtor pursuant to Section 365(b) of the Bankruptcy Code or otherwise, and any Claim for a default (monetary or non-monetary) arising from, relating to or in connection with the assumption by the Debtor of any Assumed Contract.

**Debt** has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

**Debtor** means The Palms of Treasure Island, LLC.

**Debtor in Possession** means The Palms of Treasure Island, LLC, as Debtor in Possession in the Reorganization Case.

**Disallowed Claim** means any Claim which has been disallowed by an order of the Bankruptcy Court, which order has not been stayed pending appeal.

**Disclosure Statement** means the Disclosure Statement promulgated by the Debtor that relates to this Plan as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code, as the same may be amended, supplemented or modified from time to time.

**Disputed Claim**: Prior to the date that an objection has been and may be timely filed by the Debtor, or any other party in interest, a Claim shall be considered a "Disputed Claim" to the extent that the Claim is not an Allowed Claim and (a) the amount of the Claim specified in the proof of claim exceeds the amount of the Claim listed by the Debtor in the Schedules as not disputed, contingent or unliquidated or (b) the Claim was not listed by the Debtor in the Schedules or (c) the Claim was listed by the

Debtor in the Schedules as disputed, contingent or unliquidated or (d) the Claim is subject to a pending objection, adversary proceeding, request to subordinate, or request to classify such Claim as an equity interest. Subsequent to that date, a "Disputed Claim" means a Claim as to which an objection, adversary proceeding, request to subordinate, or request to classify as an equity interest has been or may be timely filed by the Debtor, or any other party in interest and which objection, request to subordinate, or request to classify as an equity interest, if timely filed, has not been withdrawn, denied or estimated by an order of the Bankruptcy Court. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.

*Distribution* means a distribution of Cash to a Creditor on account of an Allowed Claim pursuant to the terms of the Plan.

*Distribution Date* means, when used with respect to an Allowed Claim (other than an Allowed Unsecured Claim), the date that is ten (10) or fewer Business Days after the later of (a) the Effective Date and (b) the first Business Day occurring after the date the order of the Bankruptcy Court allowing such Claim becomes a Final Order for distributions to be made pursuant to the Plan. "Distribution Date," when used with respect to an Allowed Unsecured Claim, means the date selected for any distribution to Holders of Allowed Unsecured Claims.

*Distribution Reserve Account* means the interest-bearing reserve account or accounts established and administered by the Reorganized Debtors, with the Unsecured Creditors Distribution Amount, from which Distributions under the Plan to Holders of Allowed Unsecured Claims shall be made by the Reorganized Debtors as set forth in Article 8 of the Plan.

*District Court* means the United States District Court for the Middle District of Florida, or the unit thereof having jurisdiction over the matter in question.

*Docket* means the docket or dockets in the Reorganization Case maintained by the Clerk.

*Effective Date* means the first Business Day that is more than thirty (30) days from the entry of the Confirmation Order, calculated in accordance with Bankruptcy Rule 9006(a), after the Confirmation Date.

*Entity* has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

*Equity Holder* means the holder of any Equity Interest, including any party or entity holding or with the expectation of holding an Equity Interest in the Debtor.

**Equity Interests** means the interests in the Debtor held by all Holders of Existing Beneficial Interests.

**Estate** means the estate created under Section 541 of the Bankruptcy Code as relevant to the Reorganization Case.

**Final Decree** means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

**Final Decree Date** means the date on which a Final Order, obtained after a hearing on notice to all Entities Entitled to Notice and such other entities as the Bankruptcy Court may direct, has been entered determining that the Reorganization Case should be closed.

**Final Order** means (a) an order, judgment, ruling or other decree (or any revision, modification or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other Federal court as may have jurisdiction over any proceeding in connection with the Reorganization Case for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed or vacated and which has not been stayed and as to which (i) no appeal, petition for review, reargument, rehearing, reconsideration or certiorari is pending and the time for the filing of such appeal, petition for review, reargument, rehearing, reconsideration or certiorari has expired, or (ii) such appeal or petition has been heard and determined and the time to further appeal or petition has expired with no further appeal or petition pending; or (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

**Governmental Authority or Governmental Unit** means any agency, board, bureau, executive, court, commission, department, legislature, tribunal, instrumentality, or administration of the United States, the State of Florida, any foreign government, or any other state, provincial, territorial, county, municipal, city, local, or other governmental entity in the United States, the State of Florida, or in any location where the Debtor conducts business.

**Guarantor** means any Person who has personally guaranteed any Claim, debt, or other obligation of the Debtor, whether such personal guarantee is secured by collateral or not.

**Holder** means as to any Claim (a) as to any Claim (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed in respect to such Claim, or (ii) if no Proof of Claim has been filed, the owner or holder of such Claim as shown on the Schedules of the Debtor or as otherwise provided in the Plan or determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has transferred the Claim and advised the Debtor in writing of such transfer and filed the transfer documents consistent with the Bankruptcy Rules, the transferee; and as to any Equity Interest, the

record owner or holder of such Equity Interest; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as shown on the Debtor's books, or as otherwise determined by order of the Bankruptcy Court.

*Impaired* means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

*Insider* means any person that is a director, officer or person in control of the Debtor.

*Liabilities* means any and all liabilities, obligations, judgments, damages, charges, Claims, costs, debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtor or any Affiliate, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor or any Affiliate, successor or assign thereof, the Property, any other assets of the Debtor, the business or operations of the Debtor, the Reorganization Case, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory.

*Lien* means, with respect to any asset or property, any mortgage, pledge, security interest, lien, mechanics lien, construction lien, right of first refusal, option or other right to acquire, assignment, charge, Claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such asset or property, whether voluntary or involuntary and whether arising by law or by contract.

*MSR or Mike Smith Realty, LLC* means Mike Smith Realty, LLC, as an Insider and Secured Creditor of the Debtor by virtue of certain mortgages and judgment lien(s).

*MSR Claims* means the claims against the Debtor held by Mike Smith Realty, LLC, by virtue of certain mortgages and judgment lien(s).

*Permitted Encumbrances* means Allowed Secured Claims.

*Person* means a corporation, association, limited liability company, trust, partnership, joint venture, organization, proprietorship, natural person, government or political subdivision thereof or governmental agency.

*Petition Date* means December 19, 2008, which is the date on which the voluntary petition was filed by the Debtor under Chapter 11 of the Bankruptcy Code.

**Plan** means this Amended Plan of Reorganization as the same may be amended or modified from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

**Plan Documents** means all documents, attachments and exhibits, and any amendments to the foregoing made in accordance with the terms thereof or the Bankruptcy Code, as applicable, that aid in effectuating the Plan.

**Postpetition** means arising or accruing on or after the Petition Date and before the Effective Date.

**Prepetition** means arising or accruing prior to the Petition Date.

**Priority Claim** means any Claim entitled to priority pursuant to subparagraphs (3) through (7) of Section 507(a) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Tax Claim, a Secured Claim or an Unsecured Claim.

**Priority Tax Claim** means a Claim of a governmental unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Claim, a Secured Claim, or an Unsecured Claim.

**Professional** means any professional person employed or subject to employment in the Reorganization Case with the approval of the Bankruptcy Court pursuant to Section 327 or Section 1103 of the Bankruptcy Code.

**Proof of Claim** means a proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rule 3001, 3002 or 3003.

**Property** means any real or personal property owned in whole or in part by the Debtor in any form.

**Pro Rata** means, with respect to any distribution under the Plan to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claims in such Class, all determined as of the applicable Distribution Date.

**Purchaser** means Mike Smith Realty, LLC or the highest qualified bidder at Auction.

**Released Parties** means the Debtor, together with its officers, directors and employees.

**Remaining Sale Proceeds** means any remaining proceeds of sale of the Property at Auction after payment of all undisputed liens, as well as reasonable and necessary costs of sale, held in escrow in the Distribution Reserve Account for Distribution to Holders of Allowed Claims pursuant to the Plan and the Confirmation Order.

**Reorganized Debtor** means the Debtor on and after the Effective Date as reorganized pursuant to the Plan, including any successor thereto by merger, consolidation or otherwise.

**Reorganization Case** means the case under the Bankruptcy Code which case presently bears Case No. 8:08-bk-20354-MGW.

**Reserved Claims** means all Disputed Claims as of the applicable determination date in the full amounts listed in the Schedules, unless a Proof of Claim was timely filed with respect to any such Claim, in which case in the face amount of such Proof of Claim, or unless any such Claim has been estimated by the Bankruptcy Court for the purpose of allowance pursuant to Section 502(c) of the Bankruptcy Code, in which case in such estimated amount. Unless any order of the Bankruptcy Court estimating a Claim provides otherwise, the amount so estimated shall apply both for voting purposes and for purposes of computing Reserved Claims. As used in the Plan, the term "Reserved Claims" shall not include any Disallowed Claims.

**Sale Proceeds** means the Cash received from the sale of the Debtor's Assets at Auction.

**Schedules** means the Statement of Financial Affairs and Schedules filed by the Debtor in the Reorganization Case pursuant to Bankruptcy Rule 1007, as such may heretofore or hereafter be amended from time to time.

**Secured Claim** means an Allowed Claim of a Creditor which is (a) secured by a lien on any property of the Debtor's estate, to the extent of the value, determined pursuant to Section 506(a) of the Bankruptcy Code, of such Creditor's interest in the estate's interest in such property, or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the amount subject to setoff; or (b) secured by a lien on property that is not property of the estate but is otherwise owned by Nelson Tobin with his spouse as tenants by the entireties. "Secured," when used as an adjective modifying "Claim," has a corresponding meaning.

**Secured Creditor** means any Creditor holding a Secured Claim.

**Tax Lien Claims** means Claims against the Debtor for taxes owed by the Debtor, which are secured by a valid, perfected and unavoidable Lien on any of the Debtor's real or personal property.

***United States Trustee*** means the Office of the United States Trustee for the United States Bankruptcy Court for the Middle District of Florida, Tampa Division.

***Unimpaired Claim*** means a Claim that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

***Unsecured Claim*** means any Claim which is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, or Secured Claim, including (a) Intercompany Claims, (b) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code and (c) any portion of a Claim to the extent the value of the Holder's interest in the Estate's interest in the Property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.

***Unsecured Creditor*** means any Creditor holding an Unsecured Claim.

***Unsecured Creditors Distribution Amount*** has the meaning described in Article 4 of the Plan.

***Voting Deadline*** means the last day to vote to accept or reject the Plan as fixed by order of the Bankruptcy Court.

***Voting Instructions*** means the instructions for voting on the Plan contained in the section of the Disclosure Statement entitled "Voting Instructions" and included in or accompanying the Ballot.

1.2    Terms Defined in Bankruptcy Code and Bankruptcy Rules

Any capitalized terms used in the Plan and not otherwise defined in the Plan, but that are defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to them in the Bankruptcy Code or Bankruptcy Rules as the case may be.

1.3    Construction

When used herein, words importing any gender may be applied to and include all entities; words importing the plural number may be applied to and mean a single person, entity or thing; and words importing the singular number may be applied to and mean more than a single person, entity or thing. Any reference in the Plan to an existing document or exhibit means such document or exhibit as it may have been or may be amended, modified, or supplemented. Unless otherwise specified, references in the Plan to "Article ..." mean that particular article of the Plan; references to "¶ ..." mean that particular section, paragraph, subparagraph, or other subdivision of an article of this Plan; and references to "Exhibit ..." mean that particular exhibit to the Plan. Unless the context requires otherwise, the words "herein," "hereunder," and "hereto" refer to the Plan in its

entirety rather than to a particular article, section, paragraph, subparagraph, or other subdivision of the Plan. Any phrase containing the term "include" or "including" means inclusion without limitation. The rules of construction set forth in Section 102 of the Bankruptcy Code will apply in the construction of the Plan, to the extent such rules are not inconsistent with any other provision of this Article.

**ARTICLE 2**
**TREATMENT OF ADMINISTRATIVE**
**EXPENSES AND PRIORITY TAX CLAIMS**

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Allowed Administrative Expense Claims and Priority Tax Claims have not been classified in the Plan. The treatment accorded to Administrative Expense Claims and Priority Tax Claims is set forth below in this Article 2.

2.1     Administrative Expenses

2.1.1    Except as otherwise provided below, each Holder of an Allowed Administrative Expense Claim will be paid (a) on the Distribution Date, an amount, in Cash, equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtor or the Reorganized Debtor, as the case may be.

2.1.2    Creditors consisting of vendors and suppliers furnishing post-petition services will be paid in the normal course of business.

2.1.3    All fees and charges assessed against the Estates owed to the United States Trustee under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§1911-1930, through the Confirmation Date, as determined by the Bankruptcy Court in the Confirmation Order, will be paid on or before the Effective Date. Fees and charges asserted for periods following the Confirmation Date owed to the United States Trustee under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§1911-1930 shall be paid by the Reorganized Debtor.

2.2     Priority Tax Claims

2.2.1    Except as otherwise expressly provided in the Plan, each Holder of an Allowed Priority Tax Claim shall be paid by the Debtor or the Reorganized Debtor, as the case may be, deferred equal monthly Cash payments so as to be paid by December 19, 2014.

2.2.2    All payments received by Holders of Priority Tax Claims shall be applied to liability for Trust Fund Taxes until Trust Fund Taxes have been paid in full.

2.2.3    Holders of Allowed Priority Tax Claims will receive interest on account of its Allowed Priority Tax Claims at the rate established for delinquent tax obligations pursuant to 26 U.S.C. §6621.

2.2.4    Notwithstanding the above, each Holder of an Allowed Priority Tax Claim may be paid under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Debtor or the Reorganized Debtor, as the case may be.

**ARTICLE 3**
**DESIGNATION OF CLASSES OF CLAIMS**

Set forth below is a designation of Classes of Claims against the Debtor. Except as specifically provided otherwise herein, Administrative Expense Claims specified in Section 507(a)(1) of the Bankruptcy Code and Priority Tax Claims specified in Section 507(a)(8) have not been classified and are excluded from the Classes set forth below, in accordance with Section 1123(a)(1) of the Bankruptcy Code. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class to the extent the Claim qualifies within the description of that different Class. For purposes of this Plan, the Claims are classified as follows:

3.1    Class 1: Priority Claims - Class 1 shall consist of all Priority Claims, other than Priority Tax Claims. The Debtor believes that there will be no Allowed Priority Claims requiring Distribution under the Plan. The Florida Department of Revenue ("**FDOR**") has filed Claim No. 26-1 as a Priority Claim in the amount of $70,236.50, and as a General Unsecured Claim in the amount of $5,571.60. The Debtor intends to object to Claim No. 26-1 filed by FDOR.

3.2    Class 2: Secured Tax Lien Claims - Class 2 shall consist of all Tax Lien Claims.

3.3    Class 3: Mike Smith Realty, LLC - Class 3 consists of the Secured Claims of MSR by virtue of its first mortgage security interest in the 23 condominium units (the "**Condos**") by virtue of assignment from Regions Bank, N.A. (the "**MSR First Mortgage Claim**") in the approximate amount of $5,200,538.00.

3.4    Class 4: Mike Smith Realty, LLC - Class 4 consists of the Secured Claims of MSR by virtue of its second mortgage security interest in the Condos by virtue of assignment from Cowboy Pals, LLC. (the "**MSR Second Mortgage Claim**") in the approximate amount of $1,187,000.00.

3.5    Class 5: Palms of Treasure Island Condominium Association - Class 5 consists of the Secured Claims of Palms of Treasure Island Condominium Association (the "**Palms Condo Association**") in the approximate amount of $185,000.00. The Palms Condo Association asserts a secured claim senior to other liens pursuant to §718.116, Fla. Stat.

Association asserts a secured claim senior to other liens pursuant to §718.116, Fla. Stat. The Debtor disputes the claimed secured status of the Class 5 Claims, as well as the claimed priority of any secured claims.

3.6     Class 6:  Mike Smith Realty, LLC - Class 6 consists of the Secured Claims of MSR by virtue of a Secured Judgment Lien in favor of Superior Construction and assigned to MSR (the "**MSR Judgment Lien Claim**") in the approximate amount of $824,000.00.

3.7     Class 7:  Judgment Lien Creditors - Class 7 consists of all Creditors claiming a secured interest by virtue of Liens or Final Judgments (the "**Judgment Lien Creditors**"). The Debtor believes the total claims of Judgment Lien Creditors are in the approximate amount of $420,000.00.  **[The Claims of Class 7 Judgment Lien Creditors are disallowed.  Class 7 Claims shall be treated as Class 8 General Unsecured Claims.]**

3.8     Class 8:  General Unsecured Claims - Class 8 consists of all General Unsecured Claims not otherwise classified in the Plan, including the Claims of Judgment Lien Creditors and other lien claimants to the extent those Claims are determined to be Unsecured Claims.   The Debtor has scheduled General Unsecured Claims in the approximate amount of $2,700,000.00.

3.9     Class 9:  Equity Interests - Class 9 consists of all Equity Interests in the Debtor.

## ARTICLE 4
## TREATMENT OF CLAIMS
## AND INTERESTS UNDER THE PLAN

Claims and Equity Interests in the Reorganization Case will be treated under the Plan in the manner set forth in this Article.  Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Equity Interests pursuant to the Plan will be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever) and Allowed Equity Interests.  The Claims and Equity Interests will be treated under the Plan as follows:

4.1    Class 1: Priority Claims

4.1.1    Each Holder of a Priority Claim which is an Allowed Claim shall be paid (a) in full, in Cash, by MSR if it is the successful bidder at Auction, ten (10) days after Confirmation and after the date the order allowing such Priority Claim becomes a Final Order, or (b) under such other terms as may be agreed upon by both the holder of such Priority Claim and the Debtor.  Should another party prevail at Auction, then the Allowed Administrative Claims and the Unsecured Creditors Distribution Amount shall be paid from the Remaining Sale Proceeds.

4.1.2    Holders of Class 1 Claims are Unimpaired under the Plan.

4.2    Class 2: Secured Tax Lien Claims

4.2.1    As of the Effective Date, the Holder of Allowed Class 2 Claims shall retain the Lien securing such Claims to the extent of the Allowed Amount of such Secured Tax Lien Claim.

4.2.2    The Holder(s) of Allowed Secured Tax Lien Claims shall receive payment in full, in Cash, from the proceeds of the sale of the Debtor's real property.

4.2.3    Notwithstanding the above, each Holder of an Allowed Secured Tax Lien Claim may be paid under such other terms as may be agreed upon by the Holder of such Allowed Tax Lien Claim and the Debtor.

4.2.4    Holders of Class 2 Claims are Unimpaired under the Plan.

4.3    Class 3: MSR First Mortgage Claim

4.3.1    The Class 3 MSR First Mortgage Claim shall be satisfied, in Cash, from the proceeds of the sale of the Debtor's real property

4.3.2    Class 3 is Impaired under the Plan.

4.4    Class 4: MSR Second Mortgage Claim

4.4.1    The Class 4 MSR Second Mortgage Claim shall be satisfied, in Cash, from the proceeds of the sale of the Debtor's Property to the extent funds are available from the sale proceeds after the payment of Class 3.

4.4.2    Class 4 is Impaired under the Plan.

4.5    Class 5: The Secured Claims of the Palms Condo Association.

4.5.1    Upon the Effective Date, the secured portion of the Class 5 Secured Claims, allegedly entitled to superior treatment under §718.116, Fla. Stat., shall be paid the total sum of $40,000. Any remaining amounts owed to the Holder of the Class 5 Claims shall be treated as Class 8 General Unsecured Claims.

4.5.2    Class 5 is Impaired under the Plan.

4.6    Class 6: The MSR Judgment Lien Claim

4.6.1    The Class 6 MSR Judgment Lien Claim shall be paid in full from the proceeds of the sale of the Debtor's Property to the extent funds are available from the sale proceeds and after the payment of Class 3 and Class 4 Claims. The balance of the Claim, if any, shall be treated as a Class 8 General Unsecured Claim.

4.6.2    Class 6 is Impaired under the Plan.

4.7    Class 7: Judgment Lien Claims

4.7.1    All Class 7 Judgment Lien Claims shall be deemed to be Unsecured Claims and shall be treated as Class 8 General Unsecured Claims.

4.7.2    Class 7 is Impaired under the Plan.

4.8    Class 8: General Unsecured Claims

4.8.1    Following the Effective Date, MSR, if it is the successful bidder at Auction, shall make a one time payment to the Reorganized Debtor of the Unsecured Creditors Distribution Amount, in the total amount of $40,000, which will be used by the Reorganized Debtor to pay a Pro Rata Share to each Holder of an Allowed Class 8 Claim. Should another party prevail at Auction, then the Unsecured Creditors Distribution Amount shall be paid from the Remaining Sale Proceeds.

4.8.2    The Unsecured Creditors Distribution Amount shall be held in the Distribution Reserve Account pending distribution as set forth in Article 8 of the Plan.

4.8.3    On the Distribution Date, which shall be targeted during the calendar month that is two (2) months following the Effective Date, but no later than the first anniversary of the Effective Date, each Holder of an Allowed Unsecured Claim in Class 8 shall receive such Holder's Pro Rata Share of the Unsecured Creditors Distribution Amount. The procedures for Distributions to Holders of Allowed Unsecured Claims in Class 8 shall be in accordance with Article 8 of the Plan and the Confirmation Order.

4.8.4    Class 8 is Impaired under the Plan.

4.9    Class 9: Equity Interests

4.9.1    Equity Interests shall retain nothing under the Plan unless all other Classes of Claims are paid in full under the Plan.

4.9.2    Class 9 is Impaired under the Plan.

## ARTICLE 5
## ACCEPTANCE OR REJECTION OF THE PLAN

5.1    Each Impaired Class Entitled to Vote Separately

The Holders of Claims or Equity Interests in each Impaired Class of Claims or Equity Interests in the Reorganization Case will be entitled to file a Ballot and to vote separately to accept or reject the Plan.

5.2    Acceptance by Impaired Classes

Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims will have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan by the Ballot Date and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half (½) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan by the Ballot Date, unless extended by the Bankruptcy Court. An Impaired Class of Equity Interests will have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds (2/3) in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

5.3    Presumed Acceptance of Plan

Classes 1 and 2 are Unimpaired under the Plan. Under Section 1126(f) of the Bankruptcy Code, the Holders of Claims in Classes that are unimpaired are conclusively presumed to have accepted the Plan and, thus, are not entitled to submit a Ballot or to vote on the Plan. Except as otherwise expressly provided in the Plan, nothing contained herein or otherwise will affect the Debtor's or the Reorganized Debtor's rights and legal and equitable claims and defenses in respect of any Unimpaired Claims, including all rights to object to said Claims and all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims, to the extent not already determined by the Bankruptcy Court or waived in this Plan.

# ARTICLE 6
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1    Executory Contracts and Unexpired Leases

6.1.1    Subject to the requirements of Section 365 of the Bankruptcy Code and prior Final Orders of the Bankruptcy Court, the Debtor will assume only those contracts and leases specifically enumerated in **Exhibit "A"** (the "Assumed Contracts") to the Plan as being assumed under the Plan, if any.  Any lessor or other party to any such assumed contract, if any, (excepting those lessors or other parties whose leases or executory contracts have been assumed by prior Final Order of the Bankruptcy Court) that does not file with the Bankruptcy Court and serve, on or before the Administrative Expense Bar Date –

6.1.1.1    a written objection to the proposed assumption by the Debtor of its Assumed Contract in the manner set forth in the Plan, will be conclusively deemed:

6.1.1.1.1    to have waived any such objection, and

6.1.1.1.2    to have consented to the assumption by the Debtor of its Assumed Contract or lease and will be permanently barred and restrained from objecting to the assumption by the Debtor of its assumed contract; and

6.1.1.2    a Cure Claim, default, or other Claim in the manner set forth herein, will be conclusively deemed to have acknowledged that no default or Claim (including any Cure Claim) exists under any such Assumed Contract through the Confirmation Hearing, and will be permanently barred and restrained from asserting or alleging any default or Claim (including any Cure Claim) against the Debtor based upon actions, omissions, or events occurring on or before the Confirmation Hearing in connection with or under any such assumed contract or lease.

6.1.2    The Confirmation Order will constitute an order of the Bankruptcy Court approving and authorizing the assumptions described herein pursuant to Sections 365 and 1123(b)(2) of the Bankruptcy Code, as of the Effective Date.

6.1.3    The assumption of the Assumed Contract will be, and will be deemed to be, free and clear of any and all Cure Claims (excepting those Cure Claims asserted in pleadings filed prior to entry of an Order granting the assumption of the contract or lease), any right to adequate assurance, or any right to compensation to which any party may be entitled in connection with any assumed contract or lease pursuant to Section 365 of the Bankruptcy Code, and any prepetition or postpetition Claims, damages, debts, or liabilities arising from or relating to any assumed contract or lease or the assumption thereof.

6.1.4   The assumption by the Debtor of the Assumed Contracts will be binding upon any and all parties to such Assumed Contract as a matter of law, notwithstanding any provision in any Assumed Contract prohibiting or restricting the assignment of such contract.

6.1.5   Subject to the requirements of Section 365 of the Bankruptcy Code, the Debtor may file a motion or motions, on or prior to the Confirmation Date, seeking to assume other executory contracts or unexpired leases. Any such executory contracts or unexpired leases subject to such a motion shall not be governed by this Article 6.

6.1.6   Cure of Defaults

Any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default will be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, at the option of the Debtor–

6.1.6.1   by payment of the default amount in Cash on the Effective Date or

6.1.6.2   on such other terms as are agreed to by the Debtor or the Reorganized Debtor, on the one hand, and the party to such executory contract or unexpired lease, on the other hand.

If there is a dispute regarding the amount of any Cure Claim or other cure payment or the ability of the Debtor to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed; or any other matter pertaining to assumption – the cure payments required by Section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption.

6.2.   Rejection

All executory contracts or unexpired leases that are not expressly identified by the Debtor as assumed contracts or leases, or that have not been expressly rejected by separate order of the Bankruptcy Court, or expressly assumed by the Debtor with the Bankruptcy Court's approval on or prior to the Confirmation Date shall, as of the Effective Date, be deemed to have been rejected by the Debtor.

Any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease under the Plan must be filed with the Bankruptcy Court on or before the expiration of thirty (30) days following the Confirmation Date. Such Claims, as a precondition to becoming Allowed Claims, must be timely filed and served upon the Debtor and its counsel or such Claims shall be forever barred and unenforceable against the Debtor, the Reorganized Debtor, or the Estate. Such Claims, once fixed and

liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Allowed Class 8 Unsecured Claims. The Plan shall constitute adequate and sufficient notice to Persons which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

6.3.    Indemnification Obligations

The Debtor shall assume any and all indemnification obligations (whether pursuant to the by-laws or pursuant to law) existing as of the Effective Date to any current officer, director or employee of the Debtor.

**ARTICLE 7**
**MEANS OF EXECUTION**

7.1    General Overview

The Palms is not an operating condominium/hotel and has not been operating since October, 2008. Due to a number of factors, including the depressed economy, the Debtor's interest in the physical property consists of 23 units together with certain of the common areas. The value of the Debtor's interest in the 23 units is significantly less than the total of Claims against the property and the Unsecured Claims. The Debtor plans to sell the Debtor's interest in the property at an auction authorized by the Court. Due to the depressed housing market, the Debtor expects the auction to generate a sum less than the amounts owed on the first mortgage of MSR in the amount of $5,207,538.00 and the second mortgage of MSR in the amount of $1,187,000.00, who shall be entitled to credit bid at the auction.

This Plan is a classic sale plan wherein the exit strategy for the Debtor involves the sale of substantially all assets of the Estate to the Purchaser in connection with a separately filed motion to establish bid procedures to approve the sale. MSR shall be entitled to credit bid at the Auction in the amount of the MSR Claims and shall be paid from the sale of the Debtor's real property. If MSR is the successful bidder at Auction, it shall pay all Allowed Administrative Claims and shall make a one time payment to the Reorganized Debtors of the Unsecured Creditors Distribution Amount, which will be used by the Reorganized Debtors to pay a Pro Rata share to each Holder of an Allowed Class 8 Claim. Should another party prevail at Auction, then the Allowed Administrative Claims and the Unsecured Creditors Distribution Amount shall be paid from the Remaining Sale Proceeds.

Except as otherwise expressly provided in the Plan, all Allowed Administrative Expense Claims and Priority Claims shall be paid by the Reorganized Debtor ten (10) days after the Effective Date, as provided in Article 2 of the Plan. Class 5, consisting of the Secured Claim of The Palms Condo Association, shall receive payment of $40,000 in full satisfaction of its Secured Claim, with the remaining balance owed treated as a Class

8 Claim. Class 7 Creditors shall be deemed to be Unsecured and paid as Class 8 Claims. Allowed Class 8 Claims will be paid a Pro Rata share of the Unsecured Creditors Distribution Amount. The interests of Class 9 will be paid only upon full payment of all other Classes.

7.2     Funding of Plan

7.2.1    The funding of the Debtor's liquidating Plan would involve the Auction sale of the Property as set forth above. If MSR is the successful bidder at Auction, it shall pay all Allowed Administrative Claims and shall make a one-time, non recourse payment to the Reorganized Debtors of the Unsecured Creditors Distribution Amount. Should another party prevail at Auction, then the Allowed Administrative Claims and the Unsecured Creditors Distribution Amount shall be paid from the Remaining Sale Proceeds. The Unsecured Creditors Distribution Amount and any amounts collected from the Causes of Action, if any, would be distributed on a Pro Rata basis to the Holders of Allowed Class 8 Claims, including the undersecured Judgment Lien Creditors. The Auction sale will be in accordance with Court approved bidding procedures.

7.3     Vesting of Assets

Control of the Debtor following the Effective Date and the operations of the Reorganized Debtor will continue to be controlled by the Debtor to the extent of the pursuit of any Causes of Action.

7.4     Section 1146 Exemption

Pursuant to Section 1146(a) of the Bankruptcy Code, the making or delivery of any instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the revesting, transfer, or sale of any real or personal Property of, by or in the Debtor or the Reorganized Debtor pursuant to, in implementation of or as contemplated by the Plan, will not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.

7.5     Control of the Debtor

Following the Effective Date, the operations of the Reorganized Debtor will continue to be controlled by Ron Roseman.

7.6     Reorganized Debtor's Rights, Duties and Authority

7.6.1    The Reorganized Debtor shall have all rights and powers of a debtor in possession under Section 1107 of the Code and, in accordance with Section 1123(b)(3)(B) of the Code, shall be designated and serve as the representative of the Estate.

7.6.2    In addition to any duties set forth above, the Reorganized Debtor's duties shall include the following:

7.6.2.1    resolve any pending objections to Unsecured Claims and file or otherwise assert any objections necessary or appropriate to resolve all Disputed Unsecured Claims;

7.6.2.2    make any required distributions to the Holders of Allowed Claims in accordance with the terms and provisions of the Plan;

7.6.2.3    sell, distribute or otherwise liquidate any real or personal property, tangible or intangible, received from the Debtor; and

7.6.2.4    pursue, investigate, prosecute, compromise and otherwise resolve the Causes of Action.

In performing the duties described above, the Reorganized Debtor may act through legal counsel of its choice.

# ARTICLE 8
## PROVISIONS GOVERNING DISTRIBUTIONS

8.1    Unclaimed Distributions

If the Holder of an Allowed Claim fails to negotiate a check issued to such Holder within ninety (90) days of the date such check was issued, then such check will be deemed to be unclaimed, such Holder's Claim will no longer be deemed to be Allowed, and such Holder will be deemed to have no further Claim in respect of such check and will not participate in any further distributions under the Plan.

If a distribution pursuant to the Plan to any Holder of an Allowed Claim is returned to the Debtor due to an incorrect or incomplete address for the Holder of such Allowed Claim, as to such distribution within one hundred twenty (120) days of the return of such distribution, then the amount of Cash attributable to such distribution will be deemed to be unclaimed and such Holder will be deemed to have no further Claim in respect of such distribution and will not participate in any further distributions under the Plan.

Any unclaimed Cash distribution as described above will be distributed to the Debtor.

8.2    Transfers of Claims

In the event that the Holder of any Claim will transfer such Claim on and after the Effective Date, it will immediately advise the Debtor and its counsel in writing of such transfer, and file notice of such transfer with the Bankruptcy Court. The Debtor will be entitled to assume that no transfer of any Claim has been made by any Holder unless the Debtor and its counsel have received written notice to the contrary, which has been filed with the Bankruptcy Court. Each transferee of any Claim will take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given, or other action taken hereunder and, except as otherwise expressly provided in such notice, the Debtor will be entitled to assume conclusively that the transferee named in such notice will thereafter be vested with all rights and powers of the transferor under the Plan.

8.3    Determination of Claims

Disputed Claims will be fixed or liquidated in the Bankruptcy Court, before or after the Confirmation Date, as core proceedings within the meaning of 28 U.S.C. Section 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Reorganization Case, such Claim will be estimated by the Bankruptcy Court for purposes of allowance and distribution. Upon receipt of a timely filed Proof of Claim, the Debtor, or other party in interest may file a request for estimation along with its objection to the Claim set forth therein. The determination of Claims in estimation hearings will be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and distribution. Procedures for specific estimation hearings, including provisions for discovery, will be set by the Bankruptcy Court giving due consideration to applicable Rules and the need for prompt determination of the Disputed Claim.

8.4    Distributions to Unsecured Creditors

8.4.1    The Reorganized Debtor shall assume sole responsibility and liability for all Unsecured Claims and such Unsecured Claims shall be paid by the Reorganized Debtor as described in Article 4. The entry of the Confirmation Order will act as a full and complete discharge of all Claims, Debts, Liabilities, and/or interests arising from, relating to or in connection with Unsecured Claims, except as provided in the Plan.

8.4.2    Each Holder of an Allowed Unsecured Claim in Class 8 shall receive, on each applicable Distribution Date (as provided in Article 4 of the Plan), a Cash Distribution from the Distribution Reserve Account in the amount of such Holder's Pro Rata share of the Unsecured Creditor's Distribution Amount.

8.4.3    If, on the Distribution Date, any Disputed Claims in Class 8 remain, then the Reorganized Debtor shall withhold from any such distribution the amount of funds necessary to make distributions to the Holders of all Class 8 Claims which are Disputed Claims. At such time that such Disputed Claim becomes an Allowed Claim, the Holder

of such Allowed Claim shall receive the distribution to which such Holder is then entitled under the Plan.

8.5     *De Minimus* Distributions

8.5.1   To avoid the disproportionate expense and inconvenience associated with making distributions in amounts of less than $5.00 each with respect to Allowed Unsecured Claims, the Reorganized Debtor shall be excused from making distributions in amounts of less than $5.00 each.

## ARTICLE 9
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

9.1     Conditions Precedent

9.1.1   The following is a condition precedent to the Effective Date, which condition must be satisfied or waived in writing:

9.1.1.1   the Confirmation Order shall have been signed by the Bankruptcy Court and duly entered on the docket for the Reorganization Case by the Clerk of the Bankruptcy Court.

## ARTICLE 10
## DISCHARGE, RELEASE, LIMITATION
## OF LIABILITY, AND GENERAL INJUNCTION

10.1    Discharge of Claims and Termination of Equity Interests

Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order will operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of any and all debts of, Claims of any nature whatsoever against, and Equity Interests in the Debtor that arose at any time prior to the Effective Date, including any and all Claims for principal and interest, whether accrued before, on, or after the Petition Date. Without limiting the generality of the foregoing, on the Effective Date, the Debtor and the Reorganized Debtor, and its respective successors or assigns, will be discharged from any debt that arose prior to the Effective Date and from any and all debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan.

As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of a Claim or Equity Interest, will be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtor, the Reorganized Debtor, or any of its respective successors and assigns, or the assets or Properties of any of them, any other or further Claims, debts, rights, causes of action, remedies, Liabilities, or Equity Interests based upon any act, omission, document, instrument, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan.

In accordance with the foregoing, except as specifically provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination of the discharge of all such Claims and other debts and Liabilities against the Debtor, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtor, at any time, to the extent that such judgment relates to a discharged Claim, Liability, or debt.

10.2    Postpetition Disclosures and Solicitation

Consistent with 11 U.S.C. §§1123(b)(3)(A) and 1125(e), and applicable law, the Debtor and its directors, officers, employees, agents, representatives, Professionals (acting in such capacity), and their respective heirs, executors, administrators, successors, and assigns, will neither have nor incur any Liability whatsoever to any person or other entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Reorganization Case. The rights granted under this Article are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Reorganized Debtor and its respective agents have or obtain pursuant to any provision of the Bankruptcy Code. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Consistent with 11 U.S.C. Section 1144, the Bankruptcy Court shall retain sole and exclusive jurisdiction for a period of 180 days following the entry of the Confirmation Order to consider modification of this exculpation provision in the event that any Holder of an Allowed Claim asserts that the Confirmation Order was procured by fraud.

The releases and injunctions shall not be construed to adversely impact any obligation of a creditor against any officer or employee of the Debtor based upon the individual's guaranty or endorsement. The releases would not apply to fraudulent or intentionally tortious acts or gross mismanagement.

10.3    Barton Doctrine

The "Barton Doctrine," e.g. *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881) (Supreme Court held that a trustee cannot be sued without leave of the bankruptcy court), which prohibits a party from suing either a trustee, the officers of a debtor-in-possession, or their attorneys, in a non-appointing court for acts done in their official capacity, shall pertain to the provisions of this Article, and shall stand as one of the bases for enforcement of the provisions herein. *See, e.g., In the Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998); *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240-41 (6th Cir. 1993) ("[i]t is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a nonappointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court .... counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee"); *Mangun v. Bartlett (In re Balboa Improvements, Ltd.)*, 99 B.R. 966, 970 (9th Cir. BAP 1989) (holding that permission to sue debtor's attorney for alleged misconduct in the administration of an estate must be obtained from the bankruptcy court); *Matter of Krikava*, 217 B.R. 275, 279 (Bankr. D. Neb. 1998) ("[c]onsent of the appointing bankruptcy court is required even when the plaintiff seeks to sue in another federal court").

10.4    General Injunction

Pursuant to Sections 105, 1123, 1129, and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Confirmation Date, except as otherwise provided in the Plan or in the Confirmation Order, all persons or other entities that have held, currently hold, or may hold a Claim or other debt, Liability, or Equity Interest that is discharged pursuant to the terms of the Plan are and will be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged Claims, debts, Liabilities, or Equity Interests, other than actions brought to enforce any rights or obligations under the Plan:

10.4.1.1    commencing or continuing in any manner any action or other proceeding against the Debtor or the Reorganized Debtor or its respective Properties;

10.4.1.2    enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtor, the Reorganized Debtor, or its respective Properties;

10.4.1.3    creating, perfecting, or enforcing any Lien or encumbrance against the Estate, the Debtor, the Reorganized Debtor, or its respective Properties;

10.4.1.4    asserting a setoff, right of subrogation, or recoupment of any kind against any debt, Liability, or obligation due to the Debtor, the Reorganized Debtor, or its respective Properties;

10.4.1.5    without limiting the foregoing, commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; and

10.4.1.6    commencing or continuing, in any manner or in any place outside the Bankruptcy Court, any action, suit, proceeding, Claim, or cause of action against any officer or director of the Debtor in Possession or Professional for acts done in the course of such person's duties and official capacity during the course of the Reorganization Case, in contemplation thereof, or otherwise, including but not limited to the consolidation, preservation and liquidation of the Estate and such tasks necessarily incident thereto.

10.5    No Liability for Tax Claims

Unless a taxing Governmental Authority has asserted a Claim against the Debtor by properly filing a Proof of Claim before the Bar Date established therefore, no Claim of such Governmental Authority will be Allowed against the Debtor or Reorganized Debtor for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of the Debtor or any other person or entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

## ARTICLE 11
## RETENTION OF JURISDICTION

11.1    General Retention

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Reorganization Case is closed, the Bankruptcy Court will retain the fullest and most extensive jurisdiction of the Reorganization Case that is permitted by applicable law, within the discretion of the Court, including jurisdiction necessary to ensure that the purposes and intent of the Plan are carried out.

11.2    Specific Purposes

In addition to the general retention of jurisdiction set forth in ¶10.1, after Confirmation of the Plan and until the Reorganization Case is closed, the Bankruptcy Court will retain jurisdiction of the Reorganization Case for the following specific purposes:

11.2.1.1    to determine any and all cases, controversies, suits, Causes of Action, or disputes arising under or relating to the Plan or the Confirmation Order (including regarding the effect of any release, discharge, injunction or indemnification provisions provided for herein or affected hereby and regarding whether conditions to the

consummation and/or Effective Date of the Plan have been satisfied) and to enforce the obligations under the Plan;

11.2.1.2   to determine any and all applications for allowance of compensation of Professionals and reimbursement of expenses under Sections 330, 331, or 503(b) of the Bankruptcy Code arising out of or relating to the Reorganization Case; provided, however, that this retention of jurisdiction will not be considered to require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses of Professionals after Confirmation of the Plan unless an objection to such fees and expenses has been filed by the Debtor;

11.2.1.3   to determine any and all motions, applications, adversary proceedings, contested or litigated matters, causes of action, and any other matters involving the Debtor or Reorganized Debtor, commenced in connection with, or arising during, the Reorganization Case and pending on the Effective Date, including approval of proposed settlements thereof;

11.2.1.4   to modify any provisions of the Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

11.2.1.5   to consider and act on all objections to claims, counterclaims and the compromise and settlement of any Claim against or Equity Interest in the Debtor or the Estates;

11.2.1.6   to correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary change or modification in or to the Disclosure Statement, the Plan, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

11.2.1.7   to resolve any disputes concerning any release of a non-debtor hereunder or the injunction against acts, employment of process, or actions against such non-debtor arising hereunder;

11.2.1.8   to enforce all orders, judgments, injunctions, and rulings entered in connection with the Reorganization Case;

11.2.1.9   to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

11.2.1.10 to determine all questions and disputes regarding title to the assets of the Debtor or the Estate or disputes arising Prepetition between the Debtor and all parties over which this Court has jurisdiction;

11.2.1.11 to determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits, development rights, impact fees, and similar or related matters with respect to the Debtor arising on or prior to the Effective Date or arising on account of transactions contemplated by the Plan;

11.2.1.12 to resolve any determinations which may be requested by the Debtor or the Reorganized Debtor of any unpaid or potential tax liability or any matters relating thereto under Sections 505 and 1146(d) of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion thereof ending on or before the Effective Date;

11.2.1.13 to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person or other entity with consummation, implementation, or enforcement of the Plan or the Confirmation Order;

11.2.1.14 to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

11.2.1.15 to determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, or the Confirmation Order;

11.2.1.16 to determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; and

11.2.1.17 to enter an order concluding and terminating the Reorganization Case.

11.2.1.18 To determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; and

11.2.1.19 To enter an order concluding and terminating the Reorganization Case.

11.3    Closing the Reorganization Case

In addition to the retention of jurisdiction set forth in ¶s10.1 and 10.2, the Bankruptcy Court will retain jurisdiction of the Reorganization Case to enter an order reopening the Reorganization Case after the case has been closed.

## ARTICLE 12
## MODIFICATION OF PLAN AND
## CONFIRMATION OVER OBJECTIONS

12.1    Modification of the Plan

The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan as modified and the Disclosure Statement meet applicable requirements of the Code and the Rules.

After the Confirmation Date and before the Effective Date of the Plan, the Debtor may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or distributions of a Class of Claims or Equity Interests, provided that (a) the Plan, as modified, meets applicable Bankruptcy Code requirements; (b) the Debtor obtains Bankruptcy Court approval for such modification, after notice and a hearing; (c) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims or Allowed Equity Interests voting in each Class adversely affected by such modification; and (d) the Debtor complies with Section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

12.2    Cramdown

In the event any Class of Claims or Equity Interests votes against the Plan, and the Plan is not revoked or withdrawn, the Debtor hereby requests, and will be allowed, to modify the terms of the Plan to effect a "cramdown" on the dissenting Class or Classes by (a) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2)(B) of the Bankruptcy Code, or (b) deleting distributions to all Classes at or below the level of the objecting Class, or reallocating such distributions, until such impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code. If necessary to confirm the Plan pursuant to Section 1129(b)(2)(B), the Debtor will modify the treatment of Secured Claim(s). The Debtor may make such modifications or amendments to the Plan and such modifications or amendments will be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice of the Confirmation Hearing. No such modifications will require any resolicitation of acceptances as to the Plan by any Class of Claims or Equity Interests unless the Bankruptcy Court will require otherwise.

Notwithstanding any provision of the Plan to the contrary, the Debtor reserves any and all rights they may have to challenge the validity, perfection, priority, scope, and

extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Plan.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

13.1    No Admissions

The Plan provides for the resolution, settlement, and compromise of Claims against and Equity Interests in the Debtor. Nothing herein will be construed to be an admission of any fact or otherwise to be binding upon the Debtor or any other Person in any manner prior to the Effective Date.

13.2    Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, then the Plan will be deemed null and void in all respects and nothing contained in the Plan will be deemed to (a) constitute a waiver or release of any Claims by or against, or Equity Interests in, the Debtor in the Reorganization Case or any other person or other entity, or (b) prejudice in any manner the rights of the Debtor or any other Person or other entity in any further proceedings involving the Debtor the Reorganization Case.

13.3    Professionals and Closing Costs

Following the entry of the Confirmation Order, the Reorganized Debtor may retain and compensate any and all Professionals that may be necessary in the exercise of the Debtor's business judgment without the necessity of further retention or fee applications. Furthermore, after the Confirmation Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of Professionals employed by the Reorganized Debtor in connection with the implementation and consummation of the Plan, the Claims reconciliation process, and any other matter involving the Reorganization Case. Furthermore, the Reorganized Debtor may retain and compensate any attorney, accountant, or other Professional needed in connection with the sale and closing of any loan or transfer of Property.

13.4    Settlement of Claims

The Reorganized Debtor (a) may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of any Claim or cause of action which the Debtor had or had power to assert immediately prior to the Confirmation Date, and (b) may settle or adjust such Claim or cause of action.

13.5    Standard for Bankruptcy Court Approval

In the event any of the matters described herein is brought before the Bankruptcy Court for approval, then any such approval will mean the entry of an order by the Bankruptcy Court approving the matter using the standards for approval of similar matters by a Chapter 11 debtor in possession.

13.6    Further Assurances

The Debtor is authorized, and will be deemed authorized, to execute and deliver all papers, documents, contracts, agreements, and instruments necessary to carry out and implement the terms and conditions of the Plan and the transactions contemplated thereby.

13.7    Headings

The headings and table of contents used in the Plan are for convenience and reference only and will not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

13.8    Notices

All notices, requests, and other documents in connection with the Plan or required by the Plan to be served will be in writing and will be sent by first class United States mail, postage prepaid, or by overnight delivery by a recognized courier service, to the Debtor at the following addresses:

> If to the Debtor:
>
>> Don M. Stichter, Esquire
>> Stichter, Riedel, Blain & Prosser, P.A.
>> 110 Madison Street, Suite 200
>> Tampa, Florida 33602

Any entity may change the person or address to whom or to which notices are to be given hereunder by filing a written instrument to that effect with the Bankruptcy Court and serving that instrument on the parties set forth above.

13.9    Governing Law

Except to the extent that federal law (including the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure) is applicable, or where the Plan or the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan provide otherwise, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, the

laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

13.10  Limitation on Allowance

No attorney's fees, costs, punitive damages, penalties, exemplary damages, treble damages, late charges, or interest will be paid with respect to any Claim or Equity Interest except as specified herein or as Allowed by a Final Order of the Bankruptcy Court.

13.11  Estimated Claims

To the extent that any Claim is estimated for any purpose other than for voting, then in no event will such Claim be Allowed in an amount greater than the estimated amount.

13.12  Parties and Binding Effect

This Plan and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto, including but not limited to all Holders of Claims, Holders of Interests, Holders of Administrative Expense Claims, employees, third party beneficiaries, shareholders, Governmental Authorities, parties to executory contracts and unexpired leases, in whatever capacity, and their respective officers, agents, successors, assigns, servants, employees, attorneys and any party in active concert or participation with the foregoing. Receipt of the Plan and Disclosure Statement shall be deemed sufficient notice of the content and effect thereon to bind all of the foregoing in whatever capacity, and their respective officers, agents, successors, assigns, servants, employees, attorneys and any party in active concert or participation with the foregoing. Any of the foregoing persons that fails to timely object to Confirmation of the Plan, or who does so object but has such objection overruled by the Bankruptcy Court, shall be deemed to consent to and shall be bound by the terms of the Plan as confirmed by the Bankruptcy Court.

It is expected that the Plan will be substantially consummated on or shortly after the Effective Date. The Plan provides for a complex series of intricate transactions that, if substantially consummated, will result in a comprehensive change in circumstances. The entry of the Confirmation Order shall be a determination that effective relief will be impossible absent a stay pending appeal. *E.g. Miami Center Ltd. Partnership v. Bank of New York*, 820 F.2d 376, 379 (11th Cir. 1987); *In re Club Associates*, 956 F.2d 1065, 1069 (11th Cir. 1992).

13.13   Consent to Jurisdiction

Upon any default under the Plan, the Debtor and the Reorganized Debtor consent to the jurisdiction of the Bankruptcy Court, or any successor thereto, and agree that it will be the preferred forum for all proceedings relating to any such default.

By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by filing any Cure Claim or objection to the assumption or assignment of any assumed contract, by voting on the Plan, by filing an objection to confirmation, by filing any motion or application in the Bankruptcy Court, or by entering an appearance in the Reorganization Case, all Creditors and other parties in interest have consented, and will be deemed to have expressly consented to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Reorganization Case, including the matters and purposes set forth in the Plan. The Bankruptcy Court will maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in the Plan.

13.14   Setoffs

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor's estate may, but will not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever the Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder will constitute a waiver or release by the Debtor of any such Claim that the Debtor may have against such Holder.

13.15   Successors and Assigns

The rights, benefits, duties, and obligations of any entity named or referred to in the Plan will be binding upon, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

13.16   Modification of Payment Terms

The Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the holder of such Allowed Claim.

13.17   Entire Agreement

The Plan sets forth the entire agreement and undertakings relating to the subject matter thereof and supersedes all prior discussions and documents. No person or other entity will be bound by any terms, conditions, definitions, warranties, understandings, or

representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

## 13.18 Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## 13.19 Confirmation Order and Plan Control

To the extent that the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any third party, the Plan will control the Disclosure Statement and any such agreements, and the Confirmation Order (and any other orders of the Court) will be construed together and consistent with the terms of the Plan. If the description in the Plan of the terms of an exhibit is inconsistent with the terms of the exhibit, the terms of the Plan will control.

## 13.20 Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of F.R.B.P. 9006(a) will apply.

THE PALMS OF TREASURE ISLAND, LLC


By:_____
Edward Curtin, Manager

/s/ Don M. Stichter
Don M. Stichter
Florida Bar No. 078280
Stichter Riedel Blain & Prosser, P.A.
110 E. Madison St., Ste. 200
Tampa, FL   33602
813-229-0144
813-229-1811 (facsimile)
dstichter@srbp.com
Attorneys for Debtor

**Exhibit "A"**

<u>Assumed Contracts</u>

None.