IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

                                Chapter 11

THE PALMS OF TREASURE          Case No. 8:08-bk-20354-MGW
ISLAND, LLC,

       Debtor.
_____/


**DEBTOR'S AMENDED DISCLOSURE STATEMENT**
**FOR THE DEBTOR'S AMENDED PLAN OF REORGANIZATION**

STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
Don M. Stichter
Florida Bar No. 078280
110 Madison Street - Suite 200
Tamp Florida  33602
(813) 229-0144
(813) 229-1811 (facsimile)
Counsel for the Debtor

Tampa, Florida
Dated as of October 20, 2009

THIS AMENDED DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE DEBTOR'S AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE DATED AS OF OCTOBER 20, 2009, AS FURTHER AMENDED FROM TIME TO TIME. NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR, THE REORGANIZED DEBTOR, OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR SECURITIES LAWS OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS AGAINST OR EQUITY INTERESTS IN THE DEBTOR.

ALL CREDITORS AND HOLDERS OF EQUITY INTERESTS THAT ARE ENTITLED TO VOTE ON THE AMENDED PLAN ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THE ENTIRE AMENDED DISCLOSURE STATEMENT FURNISHED TO THEM AND THE MATTERS DESCRIBED IN THIS AMENDED DISCLOSURE STATEMENT PRIOR TO SUBMITTING A BALLOT PURSUANT TO THIS SOLICITATION. THE DESCRIPTION OF THE AMENDED PLAN CONTAINED IN THIS AMENDED DISCLOSURE STATEMENT IS INTENDED AS A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE AMENDED PLAN ITSELF. EACH CREDITOR AND HOLDER OF AN EQUITY INTEREST SHOULD READ, CONSIDER, AND CAREFULLY ANALYZE THE TERMS AND PROVISIONS OF THE AMENDED PLAN.

THE DEBTOR BELIEVES THAT THE AMENDED PLAN IS IN THE BEST INTERESTS OF CREDITORS. ALL CREDITORS ARE URGED TO VOTE IN FAVOR OF THE AMENDED PLAN. VOTING INSTRUCTIONS ARE CONTAINED IN THE SECTION OF THIS AMENDED DISCLOSURE STATEMENT TITLED "VOTING INSTRUCTIONS." TO BE COUNTED, YOUR BALLOT MUST BE DULY COMPLETED AND EXECUTED AND RECEIVED BY THE CLERK OF THE BANKRUPTCY COURT BY NO LATER THAN _____, 2009.

**THE AMENDED PLAN PROPOSES EXCULPATION FROM LIABILITY AS TO THE DEBTOR AND VARIOUS OTHER PARTIES FOR CERTAIN ACTIONS IN CONNECTION WITH THIS CHAPTER 11 CASE. ALL CREDITORS, HOLDERS OF EQUITY INTERESTS, MEMBERSHIP INTERESTS, AND OTHER PARTIES IN INTEREST ARE URGED TO READ CAREFULLY ARTICLE 11 OF THE AMENDED PLAN ON EXCULPATION FROM LIABILITY.**

THIS AMENDED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION

PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

NO PERSON IS AUTHORIZED BY THE DEBTOR IN CONNECTION WITH THE AMENDED PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE AMENDED PLAN TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS AMENDED DISCLOSURE STATEMENT AND ANY EXHIBITS ATTACHED HERETO OR INCORPORATED BY REFERENCE OR REFERRED TO HEREIN, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTOR. SUCH ADDITIONAL REPRESENTATIONS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR WHO, IN TURN, SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR ACTION AS MAY BE DEEMED APPROPRIATE. THE DELIVERY OF THIS AMENDED DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES IMPLY THAT THE INFORMATION HEREIN IS CORRECT AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF. THIS AMENDED DISCLOSURE STATEMENT IS DATED AS OF OCTOBER 20, 2009, AND CREDITORS AND HOLDERS OF EQUITY INTERESTS ARE ENCOURAGED TO REVIEW THE BANKRUPTCY DOCKET FOR THIS CHAPTER 11 CASE IN ORDER TO APPRISE THEMSELVES OF EVENTS WHICH OCCUR BETWEEN THE DATE OF THIS AMENDED DISCLOSURE STATEMENT AND THE DATE OF THE CONFIRMATION HEARING.

IN THE EVENT THAT ANY IMPAIRED CLASS OF CLAIMS OR INTERESTS VOTES TO REJECT THE AMENDED PLAN, (1) THE DEBTOR MAY ALSO SEEK TO SATISFY THE REQUIREMENTS FOR CONFIRMATION OF THE AMENDED PLAN WITH RESPECT TO THAT CLASS UNDER THE BANKRUPTCY CODE'S "CRAMDOWN" PROVISIONS AND, IF REQUIRED, MAY FURTHER AMEND THE PLAN TO CONFORM TO SUCH REQUIREMENTS OR (2) THE AMENDED PLAN MAY BE OTHERWISE MODIFIED OR WITHDRAWN.

THE REQUIREMENTS FOR CONFIRMATION, INCLUDING THE VOTE OF IMPAIRED CLASSES OF CLAIMS AND INTERESTS TO ACCEPT THE AMENDED PLAN, AND CERTAIN OF THE STATUTORY FINDINGS THAT MUST BE MADE BY THE BANKRUPTCY COURT, ARE SET FORTH IN THE SECTION OF THIS AMENDED DISCLOSURE STATEMENT TITLED "VOTING ON AND CONFIRMATION OF THE PLAN."

# DISCLOSURE STATEMENT PURSUANT TO
## SECTION 1125 OF THE BANKRUPTCY CODE

## INTRODUCTION

The Palms of Treasure Island, LLC, ("**The Palms**" or "**Debtor**") has filed with the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "**Bankruptcy Court**" or "**Court**"), its Amended Plan of Reorganization dated as of October 20, 2009 (as amended from time to time, the "**Plan**"). The Debtor's Amended Disclosure Statement dated as of October 20, 2009 (the "**Disclosure Statement**"), is submitted pursuant to Section 1125 of the Bankruptcy Code, 11 U.S.C. Section 101, et. seq. (the "**Bankruptcy Code**"), in connection with the solicitation of votes on the Plan from Holders of Impaired Claims against the Debtor and the hearing on Confirmation of the Plan scheduled for August 12, 2009, at 10:30 a.m.

This Disclosure Statement has been conditionally approved by the Bankruptcy Court in accordance with Section 1125(b) of the Bankruptcy Code as containing information of a kind and in sufficient detail adequate to enable a hypothetical reasonable investor typical of Holders of Claims in the relevant Voting Classes (as defined below) to make an informed judgment whether to accept or reject the Plan. The conditional approval of this Disclosure Statement by the Bankruptcy Court and the transmittal of this Disclosure Statement do not, however, constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan and should not be interpreted as being a recommendation by the Bankruptcy Court either to accept or reject the Plan.

IN THE OPINION OF THE DEBTOR, AS DESCRIBED BELOW, THE TREATMENT OF CLAIMS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTOR. ACCORDINGLY, THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

Accompanying or included as an exhibit to this Disclosure Statement is the following:

1.    in the case of Impaired Classes of Claims (Classes 3 through 9) (collectively, the "Voting Classes"), a Ballot for acceptance or rejection of the Plan.

## PURPOSE OF THIS DISCLOSURE STATEMENT

The purpose of this Disclosure Statement is to provide the Holders of Claims and Interests with adequate information to make an informed judgment about the Plan. This information includes, among other things, (a) the procedures for voting on the Plan, (b) a

summary of the Plan and an explanation of how the Plan will function, including the means of implementing and funding the Plan, (c) general information about the history and business of the Debtor prior to the Petition Date, (d) the events leading to the filing of this Chapter 11 case, and (e) a summary of significant events which have occurred to date in this case.

This Disclosure Statement contains important information about the Plan and considerations pertinent to a vote for or against the Confirmation of the Plan. All Holders of Claims and Interests are encouraged to review carefully this Disclosure Statement.

Unless otherwise defined herein, all capitalized terms used in this Disclosure Statement have the meanings ascribed to them in the Plan. Any term used in the Plan or herein that is not defined in the Plan or herein and that is used in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules of the Bankruptcy Court has the meaning assigned to that term in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, as the case may be. If there is any conflict between the definitions contained in this Disclosure Statement and the definitions contained in the Plan, the definitions contained in the Plan shall control.

## VOTING INSTRUCTIONS

### Who May Vote

Only the Holders of Claims and Interests which are deemed "Allowed" under the Bankruptcy Code and which are "Impaired" under the terms and provisions of the Plan are permitted to vote to accept or reject the Plan. For purposes of the Plan, only the Holders of Allowed Claims in the Voting Classes are Impaired under the Plan and, thus, may vote to accept or reject the Plan. ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO MEMBERS OF THE VOTING CLASSES.

### How to Vote

Each Holder of a Claim in a Voting Class should read the Disclosure Statement, together with the Plan and any exhibits thereto, in their entirety. After carefully reviewing the Plan and this Disclosure Statement, please complete the enclosed Ballot, including your vote with respect to the Plan, and return it as provided below. If you have an Impaired Claim in more than one Class, you should receive a separate Ballot for each such Claim. If you receive more than one Ballot you should assume that each Ballot is for a separate Impaired Claim and should complete and return all of them.

If you are a member of a Voting Class and did not receive a Ballot, if your Ballot is damaged or lost, or if you have any questions concerning voting procedures, please contact Robin A. Vaughan at (813) 229-0144.

**YOU SHOULD COMPLETE AND SIGN EACH ENCLOSED BALLOT AND RETURN IT TO THE BANKRUPTCY COURT AT THE ADDRESS PROVIDED BELOW. IN ORDER TO BE COUNTED, BALLOTS MUST BE DULY COMPLETED AND EXECUTED AND RECEIVED BY THE CLERK OF THE BANKRUPTCY COURT BY NO LATER THAN _____, 2009.**

All Ballots should be returned either by regular mail, hand delivery or overnight delivery to:

> United States Bankruptcy Court
> Middle District of Florida
> Sam M. Gibbons United States Courthouse
> 801 N. Florida Avenue, Room 555
> Tampa, Florida 33602

With a copy to:

> Don M. Stichter
> Stichter, Riedel, Blain & Prosser, P.A.
> 110 E. Madison Street, Suite 200
> Tampa, Florida 33602

**Acceptance of Plan and Vote Required for Class Acceptance**

As the Holder of an Allowed Claim in the Voting Classes, your vote on the Plan is extremely important. In order for the Plan to be accepted and thereafter confirmed by the Bankruptcy Court without resorting to the "cram-down" provisions of the Bankruptcy Code as to other Classes of Allowed Claims and Allowed Interests, votes representing at least two-thirds in dollar amount and more than one-half in number of Allowed Claims of each Impaired Class of Claims that are voted, and votes representing at least two-thirds in amount of Allowed Interests of each Impaired Class of Interests that are voted, must be cast for the acceptance of the Plan. The Debtor is soliciting acceptances only from Holders of Claims in Classes 3 through 9, which are the only Classes entitled to vote on the Plan. You may be contacted by the Debtor or their agents with regard to your vote on the Plan.

To meet the requirement for confirmation of the Plan under the "cram-down" provisions of the Bankruptcy Code with respect to any Impaired Class of Claims or Interests which votes to reject or is deemed to vote to reject the Plan (a "Rejecting Class"), the Debtor would have to show that all Classes junior to the Class rejecting the Plan will not receive or retain any property under the Plan unless all Holders of Claims or Interests in the Rejecting Class receive or retain under the Plan property having a value equal to the full amount of their Allowed Claims or Allowed Interests. For a more complete description of the implementation of the "cram down" provisions of the Bankruptcy Code pursuant to the Plan, see "VOTING ON AND CONFIRMATION OF THE PLAN -- Confirmation Without Acceptance by All Impaired Classes."

**Confirmation Hearing and Objections to Confirmation**

The Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan for **November 18, 2009, at 11:00 a.m.** (the "**Confirmation Hearing**"), in Courtroom 8A, at the United States Bankruptcy Court, Middle District of Florida, Tampa Division, United States Courthouse, 801 N. Florida Avenue, Tampa, Florida, which Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing.

Any objection to Confirmation of the Plan must be filed and served in accordance with the Disclosure Statement Approval Order. Pursuant to the Disclosure Statement Approval Order, any such objection must be filed with the Bankruptcy Court by no later than _____, 2009.

## HISTORY OF THE DEBTOR
## PRIOR TO THE CHAPTER 11 FILING; CURRENT
## BUSINESS OPERATIONS OF THE DEBTOR

The information contained in this section of the Disclosure Statement is intended as a summary of the Debtor's history and business operations prior to and after the filing of the Voluntary Petition on the Petition Date.

The Debtor is the owner and developer of a thirty-six (36) unit condominium project located in Treasure Island, Florida. The project was completed in mid-2007. The Debtor sold thirteen (13) of the units to third party purchasers and remains the owner of the remaining twenty three (23) units. The Debtor ceased operation of the project for rental purposes in approximately August, 2008.

The original stockholders of the Debtor were Ron Roseman, John Lum and Aram Guluzian, the later two being the active managers. Construction funds were obtained by first mortgage of Regions Bank (the "**Regions Note**").

## EVENTS LEADING TO THE BANKRUPTCY FILING

Ron Roseman became aware that John Lum and Aram Guluzian had mismanaged the project during construction, misrepresented the intended use of the funds from obtained from Regions Bank, had taken a second mortgage against the property (the "**Cowboy Pals Mortgage**"), and misappropriated funds. The Debtor was unaware of the Cowboy Pals Mortgage taken by John Lum and Aram Guluzian. Mike Smith Realty, LLC ("**Mike Smith Realty**") purchased the judgment of Superior Construction Greenville, LLC (the "**Superior Judgment**") to avoid imminent foreclosure. Debtor's liquidity was damaged by the Regions Note maturity date of January 31, 2008, the purchase of the **Superior Judgment**, and the cross-collateralization of the Cowboy Pals Mortgage. As a result, the Debtor was unable to keep current on both the Regions Note and the Cowboy Pals Mortgage. The Debtor was faced with foreclosure actions from both secured lenders. To avoid foreclosures, Mike Smith Realty obtained an assignment

of each mortgage. Mike Smith Realty is a Florida corporation owned by Ron Roseman. As a further result of the actions by John Lum and Aram Guluzian, other creditors remained unpaid which ultimately resulted in the Debtor seeking relief under chapter 11.

Ron Roseman is the sole manager of the Debtor. Ron Roseman and Ed Curtin are members of the Debtor.

## SIGNIFICANT EVENTS
## DURING THE CHAPTER 11 CASE

### Filing of Petition

In order to preserve the going concern value of its assets, on December 19, 2008, (the "**Petition Date**"), the Debtor filed its Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division.

### Applications to Employ Professionals

*Stichter, Riedel, Blain & Prosser, P.A.* On January 13, 2009, the Debtor filed its Application for Authorization to Employ Stichter, Riedel, Blain & Prosser, P.A. as Counsel for Debtor in Possession, and on January 23, 2009, the Court entered its final order approving the Application.

*Dennis Noto & Associates, Inc.* On February 10, 2009, the Debtor filed its Emergency Application to Employ Dennis Noto & Associates, Inc. as Real Estate Appraiser *Nunc Pro Tunc* to February 9, 2009, to provide analysis and appraisal of the Debtor's property. At the hearing to consider employment of Dennis Noto & Associates, the Committee of Unsecured Creditors (the "**Committee**") objected to the employment of Dennis Noto & Associates. Thereafter, the Court entered an order authorizing the employment of an appraiser acceptable to both the Debtor the Committee.

### Chapter 11 Administration

*Schedules and Statement of Financial Affairs.* The Debtor prepared and filed its Schedules and Statement of Financial Affairs, amending those documents from time to time, as needed.

*Case Management Summary.* The Debtor filed its Case Management Summary on January 2, 2009, which provided, among other things, an overview of the Debtor, its business and operations, events leading to the filing of this Chapter 11 case, and a summary of the amounts owed to creditors.

*341 Meetings with Creditors.* The Section 341 meeting of creditors was held and concluded on January 16, 2009.

***Adversary Proceeding Case No. 8:09-ap-00367-MGW.*** In June of 209, Mike Smith Realty, LLC, commenced an adversary case in the Bankruptcy case to determine the extent, validity and priority of the various liens against, or claim to be against, the Debtor's Property. At a hearing held on October 6, 2009, the Court granted Mike Smith Realty's motion for summary judgment and determined that the following parties held liens against the property with the following priority:

     1.    <u>First Priority Lien.</u> Mike Smith Realty's First Mortgage secures a debt of $5,251.373.70, as of the commencement of the bankruptcy case, and constitutes the first-priority lien encumbering the Property. Interest continues to accrue on this secured claim. This is the earliest-recorded lien and is entitled to first-priority.

     2.    <u>Second Priority Lien.</u> Mike Smith Realty's Second Mortgage secures a debt of $1,255,039.94, as of the commencement of the bankruptcy case, and constitutes the second-priority lien encumbering the Property. Interest continues to accrue on this secured claim. This lien was recorded second, and is entitled to second-priority.

     3.    <u>Third Priority Lien.</u> Palms of Treasure Island Condominium Association, Inc., holds the third-priority lien encumbering the Property, under Fla. Stat. §718.116(5)(a), with its recorded lien for unpaid condominium assessments having priority from May 23, 2007, the date on which the Debtor recorded its original Declaration of Condominium at O.R. Book 15805, page 683, of the Public Records of Pinellas County, Florida.

     4.    <u>Fourth Priority Lien</u> Kyle K. Ferro and Donald P. Mathey, hold the fourth-priority lien against the Property by virtue of that certain judgment entered against the Debtor and in their favor in the amount of $74,147.24, which judgment was recorded in O.R. Book 15979, page 996, of the Public Records of Pinellas County, Florida. This judgment hereafter shall be referred to as the "F & M Judgment." Ferro and Mathey have filed a secured claim herein in the amount of $46,256.49, and their secured claim is allowed in that amount.

     5.    <u>Fifth Priority Lien.</u> Mike Smith Realty, LLC holds the fifth priority lien against the Property by virtue of that certain judgment originally entered against the Debtor and in favor of Superior Construction in the amount of $823,701.84, which judgment was recorded in O.R. Book 16090, page 1328, of the Public Records of Pinellas County, Florida, and which was assigned to Mike Smith Realty, LLC by virtue of that certain assignment recorded at O.R. Book 16099, page 2646, of the Public Records of Pinellas County, Florida. As of the commencement of the bankruptcy case, the debt secured by the Superior Judgment Lien was $913,316.08.

     6.    <u>Sixth Priority Lien.</u> Britannia Construction & Property Management, Inc. ("Britannia") holds the sixth priority lien against the Property by virtue of that certain Claim of Lien for $141,770.00, which Claim of Lien was recorded in O.R. Book 16107, page 1015, of the Public Records of Pinellas County, Florida, and by virtue of that certain *lis pendens* recorded in O.R. Book 16146, page 1006, of the Public Records of Pinellas County, Florida. Britannia's lien secures a debt of $141,770.00.

7.     Seventh Priority Lien. Celebrity Carpets and Interiors, Inc. ("Celebrity Carpets") holds the seventh priority lien against the Property by virtue of that certain Claim of Lien for $69,273.20, which Claim of Lien was recorded in O.R. Book 16126, page 1247, of the Public Records of Pinellas County, Florida, and by virtue of that certain lis pendens recorded in O.R. Book 16176, page 175, of the Public Records of Pinellas County, Florida. Celebrity Carpets' lien secures a debt of $69,273.20.

8.     Eighth Priority Lien. A & D Stone, Inc. ("A & D") holds the eight priority lien against the Property by virtue of that certain Claim of Lien for $14,013.60, which Claim of Lien was recorded in O.R. Book 16138, page 1230, of the Public Records of Pinellas County, Florida. As of the commencement of the bankruptcy case the sum secured by A & D's lien was $14,013.60.

9.     Ninth Priority Lien. Noley Keener, Bonnie Keener and Jeff Jensen ("Keener, Keener & Jensen") hold the ninth priority lien against the Property by virtue of that certain judgment entered against the Debtor and in their favor in the amount of $100,011.61, which judgment was recorded in O.R. Book 16258, page 1001, of the Public Records of Pinellas County, Florida. Keener, Keener and Jensen's lien secures a debt of $66,618.80.

10.     No Lien. Robert Smith holds no lien encumbering the Property. Instead, his claim shall be recognized in the main bankruptcy case as an unsecured claim.

**Post-Petition Financing**

*Financing.* The Debtor filed a Motion to Obtain Post-Petition Financing, seeking to obtain post-petition financing and to incur post-petition indebtedness under a future advance from Mike Smith Realty for the purposes paying expenses related to on-going operations, including the monthly fees to the Palms of Treasure Island Condominium Association, Inc. (the "**Association**") and to pay the costs of an appraisal of the Property of the Debtor. On February 24, 2009, the Court entered an order authorizing the Debtor to obtain $100,000.00 in unsecured credit on an administrative claim basis.

**Claims Bar Date and Plan and Disclosure Statement Deadlines**

The Bankruptcy Court has entered an order fixing _____ , 2009, as the deadline for the filing of Proofs of Claim, and October 20, 2009, as the deadline for the Debtor to file this Disclosure Statement and a Plan of Reorganization.

**Valuation of Real Property**

The Debtor estimates that the value of the Collateral is less than the claims of Mike Smith Realty as to the first and second mortgages. Debtor filed its Motion for Determination of Value of Collateral. A hearing was held on the motion and has been continued to be heard in conjunction with the Complaint to Determine Extent, Validity and Priority of Liens filed by Mike Smith Realty on June 3, 2009.

# SUMMARY OF THE PLAN

## Introduction

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor is authorized to reorganize and/or liquidate its business for the benefit of itself and its creditors and stockholders. The formulation of a plan is the principal objective of a Chapter 11 case. In general, a Chapter 11 plan (i) divides Claims and Interests into separate classes, (ii) specifies the property that each class is to receive under such plan, and (iii) contains other provisions necessary to the reorganization and/or liquidation of the debtor. Chapter 11 does not require each holder of a Claim or Interest to vote in favor of the plan in order for the Bankruptcy Court to confirm the plan. However, a plan must be accepted by the holders of at least one impaired Class of Claims without considering the votes of "insiders" as defined in the Bankruptcy Code.

The summary of the Plan contained herein addresses only certain provisions of the Plan. As a summary, it is qualified in its entirety by reference to the Plan itself. The Plan shall control and, upon Confirmation and the Effective Date, bind the Reorganized Debtor, all of the Debtor's Creditors and Holders of Interests and other parties in interest, except as expressly set forth in the Plan. TO THE EXTENT THAT THE TERMS OF THIS DISCLOSURE STATEMENT VARY OR CONFLICT WITH THE TERMS OF THE PLAN, THE TERMS OF THE PLAN SHALL CONTROL.

## TREATMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

*Section 1123 of the Bankruptcy Code provides that a plan of reorganization shall classify the claims of a debtor's creditors and the interests of a debtor's equity holders. The Plan divides the Claims and Equity Interests into nine (9) Classes.*

Section 101(5) of the Bankruptcy Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured," or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." The debtor is required under Section 1122 of the Bankruptcy Code to classify the claims and interests into separate classes which contain claims and interests that are substantially similar to the other claims and interests within such class.

The Debtor believes that it has classified all Claims and Interests in compliance with the provisions of Section 1122 of the Bankruptcy Code. However, it is possible that a Holder of a Claim or another interested party may challenge the classification of Claims and Interests contained in the Plan and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. In such event, it is the

present intent of the Debtor, to the extent permitted by the Bankruptcy Court, to make such reasonable modifications of the classifications under the Plan to provide for whatever classification might be required by the Bankruptcy Court for Confirmation and to use the Plan acceptances received in this solicitation for the purpose of obtaining the approval of the Class or Classes of which the accepting Holder is ultimately deemed to be a member. Any such reclassification could adversely affect the Class in which such Holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required of that Class for approval of the Plan. A reclassification of Claims after approval of the Disclosure Statement might necessitate a resolicitation of acceptances or rejections of the Plan.

**Summary of Plan Distributions**

Set forth below is a summary of each Class of Claims and Interests and the expected distributions under the Plan to Holders of Allowed Claims against and Allowed Equity Interests in the Debtor. Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment, and discharge of their respective Allowed Claims and Allowed Interests (of any nature whatsoever).

**Administrative Expense Claims**

Except as otherwise provided below, each Holder of an Allowed Administrative Expense Claim shall be paid (a) on the Distribution Date, an amount, in Cash equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the respective Debtor, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

All fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930, through the Effective Date shall be paid to the United States Trustee by the Debtor by no later than thirty (30) days following the Effective Date. At the time of such payment, the Debtor shall also provide to the United States Trustee an appropriate report or affidavit indicating the disbursements for the relevant periods. Following the Effective Date, the Debtor shall be responsible for any such fees required pursuant to 28 U.S.C. §1930(a)(6) for disbursements. All such payments to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements for the relevant post-confirmation periods and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6), until the earlier of (i) the closing of the Reorganization Case by the issuance of a Final Order by the Bankruptcy Court or the Final Decree Date, or (ii) the entry of an order by the Bankruptcy Court dismissing the Reorganization Case or converting the Reorganization Case to another chapter under the Bankruptcy Code.

**Priority Tax Claims**

Except as otherwise expressly provided in the Plan, each Holder of an Allowed Priority Tax Claim shall be paid by the Debtor or the Reorganized Debtor, as the case may be, deferred equal monthly Cash payments so as to be paid by December 19, 2014. All payments received by Holders of Priority Tax Claims shall be applied to liability for Trust fund Taxes until Trust Fund Taxes have been paid in full. Holders of Allowed Priority Tax Claims will receive interest on account of its Allowed Priority Tax Claims at the rate established for delinquent tax obligations pursuant to 26 U.S.C. §6621. Notwithstanding the above, each Holder of an Allowed Priority Tax Claim may be paid under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Debtor or the Reorganized Debtor, as the case may be.

**Class 1: Priority Claims (Unimpaired).**

Class 1 comprises all Allowed Priority Claims. Each Holder of a Priority Claim which is an Allowed Claim shall be paid (a) in full, in Cash, by MSR if it is the successful bidder at Auction, ten (10) days after Confirmation and after the date the order allowing such Priority Claim becomes a Final Order, or (b) under such other terms as may be agreed upon by both the holder of such Priority Claim and the Debtor. Should another party prevail at Auction, then the Allowed Administrative Claims and the Unsecured Creditors Distribution Amount shall be paid from the Remaining Sale Proceeds.

**Class 2: Secured Tax Lien Claims (Unimpaired).**

Class 2 is comprised of all Secured Tax Lien Claims. The Holders of Allowed Class 2 Claims shall retain the Lien securing such Claims to the extent of the Allowed Amount of such Secured Tax Lien Claim. The Holder(s) of Allowed Secured Tax Lien Claims shall receive payment in full, in Cash, from the proceeds of the sale of the Debtor's real property. Notwithstanding the treatment described herein, each Holder of an Allowed Secured Tax Lien Claim may be paid under such other terms as may be agreed upon by the Holder of such Allowed Tax Lien Claim and the Debtor.

**Class 3: MSR First Mortgage Claim (Impaired).**

Class 3 is comprised of the Secured Claim of MSR arising from the First Mortgage shall be satisfied, in Cash, from the proceeds of the sale of the Debtor's real property.

**Class 4: MSR Second Mortgage Claim (Impaired).**

Class 4 is comprised of the Secured Claim of MSR arising from the Second Mortgage Claim shall be satisfied, in Cash, from the proceeds of the sale of the Debtor's Property to the extent funds are available from the sale proceeds after payment of Class 3.

**Class 5: Secured Claims of Palms Condo Association (Impaired).**

Class 5 is comprised of the Secured Claims of the Palms Condo Association. Upon the Effective Date, the secured portion of the Class 5 Secured Claim, allegedly entitled to superior treatment under §718.116, Fla. Stat., shall be paid the total sum of $40,000. Any remaining amounts owed to the Holder of the Class 5 Claims shall be treated as Class 8 General Unsecured Claims.

**Class 6: MSR Judgment Lien Claim (Impaired).**

Class 6 is comprised of the MSR Judgment Lien Claim, which shall be paid in full from the proceeds of the sale of the Debtor's Property to the extent funds are available from the sale proceeds and after the payment of Class 3 and Class 4 Claims. The balance of the Claim, if any, shall be treated as a Class 8 General Unsecured Claim.

**Class 7: Judgment Lien Claims (Impaired).**

Class 7 is comprised of all Judgment Lien Claims. Judgment Lien Claims shall be deemed to be Unsecured Claims and shall be treated as Class 8 General Unsecured Claims

**Class 8: General Unsecured Claims (Impaired).**

Class 8 is comprised of all General Unsecured Claims, including the Claims of Judgment Lien Creditors and other lien claimants to the extent those Claims are determined to be Unsecured Claims. Following the Effective Date, MSR, if it is the successful bidder at Auction, shall make a one time payment to the Reorganized Debtor of the Unsecured Creditors Distribution Amount, in the total amount of $40,000, which will be used by the Reorganized Debtor to pay a Pro Rata Share to each Holder of an Allowed Class 8 Claim. Should another party prevail at Auction, then the Unsecured Creditors Distribution Amount shall be paid from the Remaining Sale Proceeds. The Unsecured Creditors Distribution Amount shall be held in the Distribution Reserve Account pending Distribution as set forth in Article 8 of the Plan. On the Distribution Date, which shall be targeted during the calendar month that is two (2) months following the Effective Date, but no later than the first anniversary of the Effective Date, each Holder of an Allowed Unsecured Claim in Class 8 shall receive such Holder's Pro Rata Share of the Unsecured Creditors Distribution Amount. The procedures for Distributions to Holders of Allowed Unsecured Claims in Class 8 shall be in accordance with Article 8 of the Plan and the Confirmation Order.

**Class 9: Equity Interests (Impaired).**

Cass 9 is comprised of all Equity Interests in the Debtor. Equity Interests shall retain nothing under the Plan unless all other Classes of Claims are paid in full under the Plan.

# ACCEPTANCE OR REJECTION OF THE PLAN

## Each Impaired Class Entitled to Vote Separately

The Holders of Claims or Equity Interests in each Impaired Class of Claims or Equity Interests in each Reorganization Case will be entitled to file a Ballot and to vote separately to accept or reject the Plan.

## Acceptance by Impaired Classes

Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims will have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan by the Ballot Date and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan by the Ballot Date, unless extended by the Bankruptcy Court. An Impaired Class of Equity Interests will have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds (2/3) in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

## Presumed Acceptance of Plan

Classes 1 and 2 are Unimpaired under the Plan. Under Section 1126(f) of the Bankruptcy Code, the Holders of Claims in Classes that are Unimpaired are conclusively presumed to have accepted the Plan and, thus, are not entitled to submit a Ballot or to vote on the Plan.

Except as otherwise expressly provided in the Plan, nothing contained herein or otherwise will affect the Debtor's or the Reorganized Debtor's rights and legal and equitable Claims and defenses in respect of any Unimpaired Claims, including all rights to object to said Claims and all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims, to the extent not already determined by the Bankruptcy Court or waived in this Plan.

## MEANS OF EXECUTION OF THE PLAN

**General Overview**

      The Palms is not an operating condominium/hotel and has not been operating since October, 2008. Due to a number of factors, including the depressed economy, the Debtor's interest in the physical property consists of 23 units together with certain of the common areas. The value of the Debtor's interest in the 23 units is significantly less than the total Claims against the property and the Unsecured Claims. The Debtor plans to sell the Debtor's interest in the property as an auction authorized by the Court. Due to the depressed housing market, the Debtor expects the auction to generate a sum less than the amounts owed on the first mortgage of MSR in the amount of $5,207,538.00 and the second mortgage of MSR in the amount of $1,187,000.00, who shall be entitled to credit bid at the auction.

      This Plan is a classic sale plan wherein the exit strategy for the Debtor involves the sale of substantially all assets of the Estate to the Purchaser in connection with a separately filed motion to establish bid procedures to approve the sale. MSR shall be entitled to credit bid at the Auction in the amount of the MSR Claims and shall be paid from the sale of the Debtor's real property. If MSR is the successful bidder at Auction, it shall pay all Allowed Administrative Claims and shall make a one time payment to the Reorganized Debtors of the Unsecured Creditors Distribution Amount, which will be used by the Reorganized Debtors to pay a Pro Rata share to each Holder of an Allowed Class 8 Claim. Should another party prevail at Auction, then the Allowed Administrative Claims and the Unsecured Creditors Distribution Amount shall be paid from the Remaining Sale Proceeds.

      Except as otherwise expressly provided in the Plan, all Allowed Administrative Expense Claims and Priority Claims shall be paid by the Reorganized Debtor ten (10) days after the Effective Date, as provided in Article 2 of the Plan. Class 5, consisting of the Secured Claims of the Palms Condo Association, shall receive payment of $40,000 in full satisfaction of its Secured claim, with the remaining balance owed treated as a Class 8 Claim. Class 7 Creditors shall be deemed to be Unsecured and paid as Class 8 Claims. Allowed Class 8 Claims will be paid a Pro Rata share of the Unsecured Creditors Distribution Amount. The interests of Class 9 will be paid only upon full payment of all other Classes.

**Executory Contracts and Unexpired Leases**

      Subject to the requirements of Section 365 of the Bankruptcy Code and prior Final Orders of the Bankruptcy Court, the Debtor will assume only those contracts and leases specifically enumerated in Exhibit "A" (the **"Assumed Contracts"**) to the Plan as being assumed under the Plan, if any. Any lessor or other party to any such assumed contract, if any (excepting those lessors or other parties whose leases or executory contracts have been assumed by prior Final Order of the Bankruptcy Court) that does not

file with the Bankruptcy court and serve, on or before the Administrative Expense Bar Date –

    a.    a written objection to the proposed assumption by the Debtor of its assumed contract in the manner set forth in the Plan, will be conclusively deemed –

        (i)    to have waived any such objection, and

        (ii)    to have consented to the assumption by the Debtor of its assumed contract or lease and will be permanently barred and restrained from objecting to the assumption by the Debtor of its Assumed Contract; and

    b.    a Cure Claim, default, or other Claim in the manner set forth herein, will be conclusively deemed t have acknowledged that no default or Claim (including any Cure Claim) exists under any such Assumed Contract through the Confirmation Hearing, and will be permanently barred and restrained from asserting or alleging any default or Claim (including any Cure Claim) against the Debtor based upon actions, omissions, or events occurring on or before the Confirmation Hearing in connection with or under any assumed contract or lease.

The Confirmation Order will constitute an order of the Bankruptcy Court approving and authorizing the assumptions described herein pursuant to §§365 abd 1123(b)(2) of the Bankruptcy Code, as of the Effective Date.

The assumption of the Assumed Contract will be, and will be deemed to be, free and, clear of any and all Cure Claims (excepting those Cure Claims asserted in pleadings filed prior to entry of an Order granting the assumption of the contract or lease), any right to adequate assurance, or any right to compensation to which any party may be entitled in connection with any assumed contract or lease pursuant to §365 of the Bankruptcy Code, and any prepetition or postpetition Claims, damages, debts, or liabilities arising from or relating to any assumed contract or lease or the assumption thereof.

The assumption by the Debtor of the Assumed Contract will be binding upon any and all parties to such Assumed Contract as a matter of law, notwithstanding any provision in any Assumed Contract prohibiting or restricting the assignment of such contract.

Subject to the requirements of §365 of the Bankruptcy Code, the Debtor may file a motion or motions, on or prior to the Confirmation Date, seeking to assume other executory contracts or unexpired leases. Any such executory contracts or unexpired leases subject to such a motion shall not be governed by Article 6 of the Plan.

## Cure of Defaults

Any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default will be satisfied, pursuant to §365(b)(1) of the Bankruptcy Code, at the option of the Debtor —

      a.     by payment of the default amount in cash on the Effective Date or

      b.     on such other terms as are agreed to by the Purchaser, debtor or the Reorganized Debtor, on the one hand, and the party to such executory contract or unexpired lease, on the other hand.

If there is a dispute regarding the amount of any Cure Claim or other cure payment or the ability of the Debtor to provide "adequate assurance of future performance" (within the meaning of §365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed; or any other matter pertaining to assumption — the cure payments required by §365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption.

## Rejection

All executory contracts or unexpired leases that are not expressly identified by the Debtor as assumed contracts or leases, or that have not been expressly rejected by separate order of the Bankruptcy Court, or expressly assumed by the Debtor with the Bankruptcy Court's approval on or prior to the Confirmation Date shall, as of the Effective Date, be deemed to have been rejected by the Debtor.

Any Claim for damages arising by reason of the rejection of an executory contract or unexpired lease under the Plan must be filed with the Bankruptcy Court on or before the expiration of thirty (30) days following the Confirmation Date. Such Claims, as a precondition to becoming Allowed Claims, must be timely filed and served upon the Debtor and its counsel or such Claims shall be forever barred and unenforceable against the Debtor, the Reorganized Debtor, or the Estate. Such Claims, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Allowed Class 8 Unsecured Claims. The Plan shall constitute adequate and sufficient notice to Persons which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

## Funding of Plan

The funding of the Debtor's liquidating Plan would involve the Auction sale of the Property as set forth above. If MSR is the successful bidder at Auction, it shall pay all Allowed Administrative Claims and shall make a one-time, non recourse payment to

the Reorganized Debtors of the Unsecured Creditors Distribution Amount. Should another party prevail at Auction, then the Allowed Administrative Claims and the Unsecured Creditors Distribution Amount shall be paid from the Remaining Sale Proceeds. The Unsecured Creditors Distribution Amount and any amounts collected from the Causes of Action, if any, would be distributed on a Pro Rata basis to the Holders of Allowed Class 8 Claims, including the undersecured Judgment Lien Creditors. The Auction sale will be in accordance with Court approved bidding procedures.

### Section 1146 Exemption

Pursuant to Section 1146(a) of the Bankruptcy Code, the making or delivery of any instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the revesting, transfer, or sale of any real or personal Property of, by or in the Debtor or the Reorganized Debtor pursuant to, in implementation of or as contemplated by the Plan, will not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.

### Control of the Debtor

Following the Effective Date, the operations of the Reorganized Debtor will continue to be controlled by Ron Roseman.

## DISCHARGE, RELEASE, LIMITATION
## OF LIABILITY, AND GENERAL INJUNCTION

### Discharge of Claims and Termination of Equity Interests

Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order will operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of any and all debts of, Claims of any nature whatsoever against, and Equity Interests in the Debtor that arose at any time prior to the Effective Date, including any and all Claims for principal and interest, whether accrued before, on, or after the Petition Date. Without limiting the generality of the foregoing, on the Effective Date, the Debtor and the Reorganized Debtor, and its respective successors or assigns, will be discharged from any debt that arose prior to the Effective Date and from any and all debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan.

As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of a Claim or Equity Interest, will be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtor, the

Reorganized Debtor, or any of its respective successors and assigns, or the assets or Properties of any of them, any other or further Claims, debts, rights, causes of action, remedies, Liabilities, or Equity Interests based upon any act, omission, document, instrument, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan.

In accordance with the foregoing, except as specifically provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination of the discharge of all such Claims and other debts and Liabilities against the Debtor, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtor, at any time, to the extent that such judgment relates to a discharged Claim, Liability, or debt.

## Postpetition Disclosures and Solicitation

Consistent with 11 U.S.C. §§1123(b)(3)(A) and 1125(e), and applicable law, the Debtor and its directors, officers, employees, agents, representatives, Professionals (acting in such capacity), and their respective heirs, executors, administrators, successors, and assigns, will neither have nor incur any Liability whatsoever to any person or other entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Reorganization Case. The rights granted under this Article are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Reorganized Debtor and its respective agents have or obtain pursuant to any provision of the Bankruptcy Code. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Consistent with 11 U.S.C. Section 1144, the Bankruptcy Court shall retain sole and exclusive jurisdiction for a period of 180 days following the entry of the Confirmation Order to consider modification of this exculpation provision in the event that any Holder of an Allowed Claim asserts that the Confirmation Order was procured by fraud.

The releases and injunctions shall not be construed to adversely impact any obligation of a creditor against any officer or employee of the Debtor based upon the individual's guaranty or endorsement. The releases would not apply to fraudulent or intentionally tortious acts or gross mismanagement.

## Barton Doctrine

The "Barton Doctrine," e.g. *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881) (Supreme Court held that a trustee cannot be sued without leave of the bankruptcy court), which prohibits a party from suing either a trustee, the officers of a debtor-in-possession, or their attorneys, in a non-appointing court for acts done in their official capacity, shall pertain to the provisions of this Article, and shall stand as one of the bases for enforcement of the provisions herein. *See, e.g., In the Matter of Linton*, 136 F.3d 544,

545 (7th Cir. 1998); *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240-41 (6th Cir. 1993) ("[i]t is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a nonappointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court .... counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee"); *Mangun v. Bartlett (In re Balboa Improvements, Ltd.)*, 99 B.R. 966, 970 (9th Cir. BAP 1989) (holding that permission to sue debtor's attorney for alleged misconduct in the administration of an estate must be obtained from the bankruptcy court); *Matter of Krikava*, 217 B.R. 275, 279 (Bankr. D. Neb. 1998) ("[c]onsent of the appointing bankruptcy court is required even when the plaintiff seeks to sue in another federal court").

**General Injunction**

Pursuant to Sections 105, 1123, 1129, and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Confirmation Date, except as otherwise provided in the Plan or in the Confirmation Order, all persons or other entities that have held, currently hold, or may hold a Claim or other debt, Liability, or Equity Interest that is discharged pursuant to the terms of the Plan are and will be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged Claims, debts, Liabilities, or Equity Interests, other than actions brought to enforce any rights or obligations under the Plan:

a. commencing or continuing in any manner any action or other proceeding against the Debtor or the Reorganized Debtor or its respective Properties;

b. enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtor, the Reorganized Debtor, or its respective Properties;

c. creating, perfecting, or enforcing any Lien or encumbrance against the Estate, the Debtor, the Reorganized Debtor, or its respective Properties;

d. asserting a setoff, right of subrogation, or recoupment of any kind against any debt, Liability, or obligation due to the Debtor, the Reorganized Debtor, or its respective Properties;

e. without limiting the foregoing, commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; and

f.     commencing or continuing, in any manner or in any place outside the Bankruptcy Court, any action, suit, proceeding, Claim, or cause of action against any officer or director of the Debtor in Possession or Professional for acts done in the course of such person's duties and official capacity during the course of the Reorganization Case, in contemplation thereof, or otherwise, including but not limited to the consolidation, preservation and liquidation of the Estate and such tasks necessarily incident thereto.

**No Liability for Tax Claims**

Unless a taxing Governmental Authority has asserted a Claim against the Debtor by properly filing a Proof of Claim before the Bar Date established therefore, no Claim of such Governmental Authority will be Allowed against the Debtor or Reorganized Debtor for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of the Debtor or any other person or entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

## MODIFICATION OF PLAN AND
## CONFIRMATION OVER OBJECTIONS

**Modification of the Plan**

The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan as modified and the Disclosure Statement meet applicable requirements of the Code and the Rules.

After the Confirmation Date and before the Effective Date of the Plan, the Debtor may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or distributions of a Class of Claims or Equity Interests, provided that (a) the Plan, as modified, meets applicable Bankruptcy Code requirements; (b) the Debtor obtains Bankruptcy Court approval for such modification, after notice and a hearing; (c) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims or Allowed Equity Interests voting in each Class adversely affected by such modification; and (d) the Debtor complies with Section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

**Revocation or Withdrawal of the Plan**

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, then the Plan will be deemed null and void in all respects and nothing contained in the Plan will be deemed to (a) constitute a waiver or release of any Claims by or against, or Equity Interests in, the

Debtor or any other person or other entity, or (b) prejudice in any manner the rights of the Debtor or any other Person or other Entity in any further proceedings involving the Debtor in that particular Reorganization Case.

## Cramdown

In the event any Class of Claims or Equity Interests votes against the Plan, and the Plan is not revoked or withdrawn, the Debtor hereby requests, and will be allowed, to modify the terms of the Plan to effect a "cramdown" on the dissenting Class or Classes by (a) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2)(B) of the Bankruptcy Code, or (b) deleting distributions to all Classes at or below the level of the objecting Class, or reallocating such distributions, until such impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code. If necessary to confirm the Plan pursuant to Section 1129(b)(2)(B), the Debtor will modify the treatment of Secured Claim(s). The Debtor may make such modifications or amendments to the Plan and such modifications or amendments will be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice of the Confirmation Hearing. No such modifications will require any resolicitation of acceptances as to the Plan by any Class of Claims or Equity Interests unless the Bankruptcy Court will require otherwise.

Notwithstanding any provision of the Plan to the contrary, the Debtor reserves any and all rights they may have to challenge the validity, perfection, priority, scope, and extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Plan.

## Generally

In order to confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of determinations concerning the Plan including that (a) the Plan has classified Claims in a permissible manner, (b) the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code, (c) the Debtor has proposed the Plan in good faith, and (d) the Debtor's disclosures are required by Chapter 11 of the Bankruptcy Code have been adequate and have included information concerning all payments made or promised in connection with the Plan. The Debtor believes that all of these requirements will have been med by the date of the Confirmation Hearing and will seek rulings of the Bankruptcy Court to such effect at the hearing.

The Bankruptcy Code also requires that the Plan shall have been accepted by the requisite votes of Creditors (except to the extent that "cramdown" is available under §1129(b) of the Bankruptcy Code, as described at "Confirmation Without Acceptance By All Impaired Classes" below); that the Plan be feasible (that is, that there be a reasonable prospect that the obligations can be performed under the Plan without further financial reorganization); and that the Plan be in the "best interests" of all impaired Creditors (that is, that impaired Creditors will receive pursuant to the Plan value at least equal to the value they would receive in a Chapter 7 liquidation). To confirm the Plan, the

Bankruptcy Court must find that all of these requirements are met. Thus, even if the Creditors accept the Plan by requisite votes, the Bankruptcy Court must make independent findings respecting the Plan's feasibility and whether it is in the best interests of the Creditors before it may confirm the Plan. These statutory conditions to confirmation are discussed below.

## Classification of Claims

The Bankruptcy Code requires that a plan of reorganization place each Creditor's claim in a class with other claims which are "substantially similar." The Debtor believes that the Plan meets the classification requirements of the Bankruptcy Code.

## Voting

As a condition to confirmation, the Bankruptcy Code requires that each impaired Class of Claims accept the Plan. A Class is "impaired" if the legal, equitable or contractual right attaching to the Claims of that Class are modified, other than by curing defaults and reinstating maturity or by payment in full in cash. The Bankruptcy Code defines acceptance of a plan by an impaired Class of Claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of Claims allowed for voting purposes of that class, but for that purpose counts only those who actually vote to accept or reject the Plan. Holders of Claims who fail to vote are not counted as either accepting or rejecting the Plan. Classes of Claims that are not "impaired" under the Plan are deemed to have accepted the Plan.

## Best Interests of Creditors

Notwithstanding acceptance of the Plan, as provided for in the Bankruptcy Code, by Creditors of each Class, in order to confirm the Plan the Bankruptcy Court must independently determine that the Plan is in the best interests of all Classes of Creditors impaired by the Plan. The "best interests" test requires that the Bankruptcy Court find that the Plan provides to each member of each Impaired Class of Claims a recovery which has a value at least equal to the value of the distribution which each such person would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. The Debtor believes that distributions to all Classes of impaired Creditors in accordance with the terms of the Plan would exceed the net distribution that would otherwise take place in Chapter 7.

## Feasibility

As provided for in the Bankruptcy Code, in order to confirm the Plan the Bankruptcy Court must determine that the Plan is not likely to be followed by the need for further reorganization or liquidation.

## Confirmation Without Acceptance by all Impaired Classes

The Bankruptcy Code contains provisions for confirmation of a plan even if the plan is not accepted by all Impaired Classes, as long as at least one impaired class of claims has accepted it. These "cram-down" provisions of the Bankruptcy Code are set forth in Section 1129(b) of the Bankruptcy Code.

The Plan may be confirmed under the cram-down provisions and be binding on a non-accepting Impaired Class if, in addition to satisfying the other requirements of Section 1129 of the Bankruptcy Code, (a) it "does not discriminate unfairly" and (b) it is "fair and equitable" with respect to each Class of Claims that is Impaired under, and has not accepted, the Plan. As used by the Bankruptcy Code, the phrases "discriminate unfairly" and "fair and equitable" have narrow and specific meanings unique to bankruptcy law.

The requirement that a plan not "discriminate unfairly" means that a dissenting class must be treated equally with respect to other classes of the same rank. The Debtor believes that the Plan does not "discriminate unfairly" with respect to any Class of Claims because no Class is afforded treatment which is disproportionate to the treatment afforded other Classes of equal rank.

The "fair and equitable" standard, also known as the "absolute priority rule," requires that a dissenting Class receive full compensation for its Allowed Claims before any junior Class receives any distribution. The Debtor believes the Plan is fair and equitable to all Classes pursuant to this standard.

Accordingly, if necessary, the Debtor believes that the Plan meets the requirements for confirmation by the Bankruptcy Court, notwithstanding the non-acceptance by an Impaired Class of Claims.

The Debtor intends to evaluate the results of the balloting and determine whether to seek confirmation of the Plan in the event that Classes of Impaired Claims do not vote to accept the Plan. The determination as to whether to seek confirmation under such circumstances will be announced before or at the Confirmation Hearing.

## ALTERNATIVES TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed, the potential alternatives include (a) alternative plans of reorganization under Chapter 11, (b) dismissal of the Reorganization Case, or (c) conversion of the Reorganization Case to a case under Chapter 7 of the Bankruptcy Code.

### Alternative Plans of Reorganization

If the Plan is not confirmed, the Debtor or, subject to further determinations by the Bankruptcy Court as to extensions of exclusivity under the Bankruptcy Code, other

parties in interest could attempt to formulate and propose a different Plan or Plans. The Debtor believes that this Plan will enable Holders of Allowed Claims to be paid the maximum amount possible.

**Liquidation under Chapter 7**

If the Plan is not confirmed, the Reorganization Case may be converted to a Chapter 7 liquidation case. In a Chapter 7 case, a trustee would be elected or appointed to liquidate the assets of the Debtor. The proceeds of the liquidation would be distributed to the Creditors of the Debtor in accordance with the priorities established by the Bankruptcy Code.

In general, the Debtor believes that liquidation under Chapter 7 would result in diminution of the value of the interests of the Creditors because of (a) additional administrative expenses involved in the appointment of a trustee and attorneys, accountants and other professionals to assist such trustee; (b) additional expenses and claims, some of which might be entitled to priority, which would arise by reason of the liquidation; (c) failure to realize the full value of the Debtor' assets; and (d) the substantial delay which would elapse before Creditors would receive any distribution in respect of their Claims.

## SUMMARY, RECOMMENDATION AND CONCLUSION

The Plan provides for an orderly and prompt distribution to holders of Allowed Claims and the satisfaction of all asserted claims and interests. Accordingly, the Debtor believes that the Plan is in the best interests of all parties.

Respectfully submitted,

THE PALMS OF TREASURE ISLAND, LLC,

By:_____
               Edward Curtin, Manager

/s/ Don M. Stichter
Don M. Stichter
Florida Bar No. 078280
Stichter Riedel Blain & Prosser, P.A.
110 Madison Street - Suite 200
Tampa, Florida 33602
(813) 229-0144
(813) 229-1811 (facsimile)
dstichter@srbp.com
Attorneys for the Debtor

In re:                                    Chapter 11

THE PALMS OF TREASURE                     Case No. 8:08-bk-20354-MGW
ISLAND, LLC,

        Debtor.

_____/

## BALLOT FOR ACCEPTING OR REJECTING
## DEBTOR'S AMENDED PLAN OF REORGANIZATION

     The Amended Plan of Reorganization (the "Plan") referred to in this Ballot can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of §1129(b) of the Bankruptcy Code. To have your vote count, you must complete and return this ballot.

---

**Name of Creditor:** _____

**Amount of Claim$**_____          **Class:** _____

The undersigned, a creditor of the above-name Debtor in the unpaid principal amount stated above,

         [  ] Accepts                              [  ] Rejects

the Plan proposed by the Debtor, PALMS OF TREASURE ISLAND, LLC

---

Signed:_____

Print or Type Name:_____

Title:_____

Name of Company:_____

Address:_____

| This ballot must be **received** on or before _____ __, 2009, by the Court at the following address:<br><br>Clerk, United States Bankruptcy Court<br>Sam M. Gibbons U.S. Courthouse<br>801 North Florida Ave., Ste. 555<br>Tampa, Florida 33602-3826 | A copy of this ballot is to be sent to:<br><br>Don M. Stichter<br>Stichter Riedel Blain & Prosser, P.A.<br>110 East Madison St. Ste. 200<br>Tampa, FL 33602 |
| --- | --- |

## SUMMARY OF CLASSIFICIATION OF CLAIMS OR INTERESTS

[For a full description of the claims or interests in each class,
please refer to the Debtor's Amended Plan of Reorganization]

| Class | Description of Claim or Interest |
| --- | --- |
|  |  |
| 3 | Mike Smith Realty, LLC – First Mortgage Claim |
| 4 | Mike Smith Realty, LLC – Second Mortgage Claim |
| 5 | Palms of Treasure Island Condominium Association |
| 6 | Mike Smith Realty, LLC – Judgment Lien Claim |
| 7 | Judgment Lien Creditors |
| 8 | General Unsecured Claims |
| 9 | Equity Interests |
|  |  |